**THOMPSON v. TERMINAL SHARES, Inc., et al. (two cases).**

Nos. 11380, 11381.

Circuit Court of Appeals, Eighth Circuit.

May 18, 1939.

Rehearing Denied June 12, 1939.

2

R. B. Caldwell, of Kansas City, Mo., and J. Porter Henry, of St. Louis, Mo. (John W. Oliver, of Kansas City, Mo., on the brief), for appellant.

Godfrey Goldmark, of New York City (Elton L. Marshall and Henry N. Ess, both of Kansas City, Mo., and Max Freund, of New York City, on the brief), for appellee Guaranty Trust Co. of New York, as Trustee, and John R. Douglass, Ogden B. Talbot, Ralph Miller and James V. O'Reilly, partners, doing business as Douglass & Co.

David W. Peck, of New York City, and Elton L. Marshall and Henry N. Ess, both of Kansas City, Mo., for appellee Marine Midland Trust Co. of New York, as trustee.

William B. Cockley, of Cleveland, Ohio, Lon O. Hocker, of St. Louis, Mo., and Arthur L. Dougan, of Cleveland, Ohio, for appellees Terminal Shares, Inc., Alleghany Corporation, and John P. Murphy, Henry A. Marting and John J. Murray, as trustees, etc.

James S. Simrall, of Kansas City, Mo., and Richard L. Douglas, of St. Joseph, Mo., for appellees North Kansas City Bridge & R. Co., North Kansas City Development Co., Parkside Land Co., Guinotte Land Co., Kansas City Ferry Co., North Kansas City Land & Improvement Ass'n, Union Terminal Ry. Co., and St. Joseph Belt Ry. Co.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

This is an ancillary and dependent suit brought by the appellant in the United States District Court for the Eastern District of Missouri, in the Matter of Missouri Pacific Railroad Company, Debtor, a proceeding for the reorganization of a railroad under Section 77 of the Bankruptcy Act.[1] From orders vacating the service of process upon the defendants and setting aside the order authorizing such service, these appeals are taken.

The controversy is over the jurisdiction of the court of bankruptcy to entertain the suit, the ultimate purpose of which is to recover for the trust estate $3,200,000 paid by the debtor, prior to the filing of its petition for reorganization, to Guaranty Trust Company of New York under four executory contracts whereby the debtor agreed to purchase, and Terminal Shares, Inc., agreed to sell to it, shares of capital stock and other obligations of certain Missouri corporations not present in the Eastern Judicial District of Missouri.

[1] Act of March 3, 1933, c. 204, 47 Stat. 1474; Act of Aug. 27, 1935, c. 774, 49 Stat. 911; Act of June 26, 1936, c. 833, 49 Stat. 1969; Tit. 11, U.S.C. § 205, 11 U.S.C.A. § 205.

Briefly, the facts alleged in the bill are as follows: That in December, 1930, the debtor, under four contracts, agreed to buy from Terminal Shares, Inc., capital stock and obligations of these Missouri corporations for $20,234,260, payable $400,000 quarterly; that on January 1, 1931, Terminal Shares, Inc., entered into a trust agreement with the Guaranty Trust Company of New York, as trustee, under which the securities which the debtor had agreed to purchase, together with the rights of Terminal Shares, Inc., in the contracts with the debtor, were pledged to secure the payment of $16,000,000 of notes of Terminal Shares, Inc., delivered to Alleghany Corporation; that Alleghany Corporation, in turn, pledged the notes of Terminal Shares, Inc., to Guaranty Trust Company of New York as additional security for bonds of Alleghany Corporation in the hands of the public, the total aggregate principal amount of which bonds was $85,000,000; that in July, 1933, Guaranty Trust Company of New York resigned as trustee under its trust agreement with Terminal Shares, Inc., and Marine Midland Trust Company of New York was appointed successor trustee; that John R. Douglass, Ogden B. Talbot, Ralph Miller and James V. O'Reilly, copartners as Douglass & Company, are, as nominees of Guaranty Trust Company of New York, the record owners of the stock described in the four contracts of purchase; that the contracts are invalid and unenforceable because fraudulent, ultra vires, and procured by coercion; and that the plaintiff, as trustee of the debtor, is entitled to a return of the $3,200,000 paid by the debtor under the contracts prior to the filing of its petition in reorganization, and has an equitable lien therefor upon the property described in the four contracts of purchase, superior to all other liens upon it. The prayer of the bill is that this equitable lien be foreclosed; that the property be sold and the proceeds thereof applied in satisfaction of the lien; that the defendants be required to account for all sums due the plaintiff; and that an injunction preventing the sale or transfer of the property subject to the lien be issued.

The defendants, eighteen in number, are the persons and corporations having or claiming interests adverse to that asserted by the plaintiff in the subject matter of the suit. The bill shows that none of them was present or was served with process in the Eastern Judicial District of Missouri. There is no allegation in the bill that any of the property on which the equitable lien is claimed is within the Eastern District of Missouri, and it is conceded that it is not. The situs of this property is in the Western Judicial District of Missouri. Thompson v. Terminal Shares, Inc., 8 Cir., 89 F.2d 652, 656. The defendants were served with process outside the Eastern District of Missouri, pursuant to an order of the bankruptcy court. They appeared specially and moved to vacate and set aside the order for service and the service made pursuant thereto. Their motions were granted, the court being of the opinion that it was without jurisdiction to entertain the suit. Thompson v. Terminal Shares, Inc., D.C., 24 F.Supp. 724.

The appellant contends that the court of bankruptcy had jurisdiction of the suit and was bound to exercise it. The supporting argument is, in substance, this: That subdivision (a) of Section 77, 11 U. S.C.A. § 205(a), grants to the court of bankruptcy exclusive jurisdiction of the debtor and its property, wherever located, and all the powers, not inconsistent with Section 77, which a Federal court would have, had it appointed an equity receiver; that it also provides that process of the court shall extend to and be valid when served in any judicial district; that a Federal court which has appointed a receiver in equity has, in proceedings ancillary to the receivership, jurisdiction to decide questions incident to the preservation, collection, and distribution of assets of the trust estate; that this suit involves questions incident to the collection of the assets of the trust estate; that the power to determine these questions is not inconsistent with Section 77; that, since its process extended to and was valid in any judicial district, the court not only has jurisdiction of the subject matter, but also has jurisdiction of the persons of the nonresident defendants, all of whom were served with process outside the District.

This argument is presented by appellant's counsel with great force and logic, but is not completely convincing when the language of subdivision (a) of Section 77, upon which it is based, is considered in connection with subdivision (l) of Section 77, 11 U.S.C. § 205(l), 11 U.S.C.A. § 205(l), which provides: "In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the

debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed", and when read in the light of the legislative history of Section 77 and of long established Congressional policy.

There is no doubt that a Federal court which has appointed a receiver in equity for an insolvent debtor has jurisdiction to entertain suits in equity and actions at law which are ancillary to the main proceeding. White v. Ewing, 159 U.S. 36, 39, 15 S.Ct. 1018, 40 L.Ed. 67; Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 73 L.Ed. 669; Alexander v. Hillman, 296 U.S. 222, 235–243, 56 S.Ct. 204, 80 L.Ed. 192.

The power of Congress to grant to the courts of bankruptcy nationwide jurisdiction at law or in equity over all controversies arising in connection with the estates which they administer either in bankruptcy or reorganization, is not to be doubted. Schumacher v. Beeler, 293 U.S. 367, 371, 55 S.Ct. 230, 79 L.Ed. 433.

The inquiry here, however, is not as to what Congress might have done, but as to what it actually did with respect to the jurisdiction of the bankruptcy courts in enacting and amending Section 77.

Prior to the date when Section 77 was first enacted (March 3, 1933, c. 204, 47 Stat. 1474), a court of bankruptcy, although having exclusive jurisdiction of the property of a bankrupt, wherever situated, would have had no jurisdiction of a controversy such as this between a trustee in bankruptcy and third persons, either in a summary proceeding or in a plenary suit. This, because the property upon which the equitable lien is sought is in the possession of adverse claimants whose claims are substantial and not merely colorable, because the existence of the lien is in dispute, and because the trustee has neither title nor possession of the property, and the defendants have not consented to litigate the controversy in the court of bankruptcy.

At the time the defendants were served with process, Section 23 of the Bankruptcy Act (as amended May 27, 1926, c. 406, § 8, 44 Stat. 664)[2] provided as follows:

"(a) The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"(b) Suits by the trustee shall be brought or prosecuted only in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under section 60, subdivision b; section 67, subdivision e; and section 70, subdivision e."

And it has long been the law that a court of bankruptcy may not adjudicate a controversy with respect to property held adversely to the bankrupt estate under a substantial claim of right, without the consent of the adverse claimant. Harrison v. Chamberlin, 271 U.S. 191, 193, 46 S.Ct. 467, 70 L.Ed. 897; Jaquith v. Rowley, 188 U.S. 620, 625, 626, 23 S.Ct. 369, 47 L.Ed. 620; Harris v. First National Bank, 216 U.S. 382, 383–385, 30 S.Ct. 296, 54 L.Ed. 528; Park v. Cameron, 237 U.S. 616, 618, 35 S.Ct. 719, 59 L.Ed. 1147; Central Republic Bank & Trust Co. v. Caldwell, 8 Cir., 58 F.2d 721, 730–732; In re Prima Co., 7 Cir., 98 F.2d 952, 957. See, also, In re Tax Service Ass'n of Illinois. (Harris v. Avery Brundage Co.), 305 U.S. 160, 164, 59 S.Ct. 131, 133, 83 L.Ed. 100.

Section 77, as originally enacted, provided, under subdivision (a), 11 U.S.C.A. § 205(a) note that the bankruptcy court in which the petition for reorganization was filed and approved "shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located." Subdivision (n), 11 U.S.C.A. § 205(n) note, provided: "In proceedings under this section and con-

---

[2] See and compare Sec. 23 as amended on June 22, 1938, c. 575, § 1, 52 Stat. 854, 11 U.S.C. § 46, 11 U.S.C.A. § 46.

sistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and his property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed."

On June 7, 1934, Section 77B of the Bankruptcy Act, c. 424, 48 Stat. 912, 11 U.S.C. § 207, 11 U.S.C.A. § 207, relating to the reorganization of all corporations except those which were authorized to file petitions under Section 77, became a law. With respect to the jurisdiction of the court of bankruptcy, Section 77B in subdivision (a), 11 U.S.C.A. § 207(a), provided that, after the entry of the order approving the petition for reorganization, the court "shall, during the pendency of the proceedings under this section, have exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section, and shall have and may exercise all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature." Subdivision (o) of Section 77B and subdivision (n) of Section 77 were identical.

It is to be noted, then, that at the time Section 77B was enacted, the jurisdiction granted to the court of bankruptcy under both Section 77 and Section 77B was the same, except that under Section 77B the court of bankruptcy was granted, in addition to its usual powers in bankruptcy, the powers, not inconsistent with the section, which a Federal court would have, had it appointed a receiver in equity.

On January 23, 1935, the Chairman of the Interstate Commerce Commission transmitted to Congress the "Report of the Federal Coordinator of Transportation, 1934", which recommended a revision of Section 77. In that report, under the heading "Bankruptcy Act Revision" (page 100 et seq.) appears the following pertinent language:

"The pendency of a large number of railroad receiverships or bankruptcies, and the probability of others in the future, make it desirable that precautions be taken to improve as far as possible the administration of the railroad insolvency laws.

Property interests of great magnitude are at stake; the nature of the future capital structure of the railroads is involved; the reorganization practice in the past has been unsatisfactory. The subject matter is technical and there is a marked conflict of interest between classes of investors—the bondholders as against the equity holders, for example—making the problem one where, consequently, it is necessary to legislate with great care.

"Section 77 of the Bankruptcy Act was enacted in 1933. It was an intelligent step in the right direction, but was hurriedly enacted and can be improved. Fourteen proceedings have been instituted under it, of which one has been dismissed.

*     *     *     *     *     *

"Section 77 was designed with the purpose of expediting reorganizations, but there has been slow progress under it. No better progress has been made in the equity proceedings. The depression has been largely responsible for this slowness, but there are deficiencies in section 77 which should be cured by amendment, and particularly by amendments designed to minimize the difficulties in obtaining the assents of creditors and shareholders."

"Among the important amendments proposed are these:"

Then follows a discussion of amendments regarded by the Coordinator as of importance, which includes no reference to any amendment relating to the jurisdiction of the bankruptcy court.

This language follows:

"The Seventy-third Congress in 1934 passed as section 77B of the Bankruptcy Act an amendment which is applicable to nonrailroad corporations. It was based upon section 77, but incorporated many minor changes which reflected the more thorough consideration of the problems. Such changes, where appropriate, should be adopted. They are largely minor.

*     *     *     *     *     *

"Minor amendments are necessary, designed to facilitate the abandonment of unremunerative branches of services; to require that the Bureau of Finance of the Commission prepare the data essential in the formulation of valuation plans, a burden now borne by the respective protective committees with great duplication of effort and expense; and to require that any person having information as to the names and addresses of security holders

divulge it for the benefit of the reorganization. In addition, there are a great number of minor improvements which are too much a matter of detail to justify discussion here.

"The bill providing for the proposed revision of section 77 of the Bankruptcy Act is herewith submitted as appendix X."

The bill proposed by the Coordinator in Appendix X amends the jurisdictional provision of subdivision (a) by adding after the grant of exclusive jurisdiction of the debtor and its property, wherever located, the following:

"and shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity of the property of the debtor for any purpose. Process of the court shall extend to and be valid when served in any judicial district. The Supreme Court of the United States shall promulgate rules relating to the service of process outside of the district in which the proceeding is pending, and any other rules which it may deem advisable in order to aid district courts and circuit courts of appeal in exercising the jurisdiction herein conferred upon them."

The bill of the Coordinator also contains the suggestion that what was subdivision (n) of Section 77 be amended to read as follows:

"*Except as otherwise provided,* in proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed." [Italics indicate new matter.]

The report of the Coordinator nowhere contained any suggestion or any basis for a suggestion that the lack of jurisdiction of the bankruptcy courts over controversies between trustees and adverse claimants had prejudicially affected reorganization proceedings, or that the proposed amendments relating to jurisdiction were intended to confer any additional powers upon the courts of bankruptcy with respect to the reorganization of railroads.

The Judiciary Committee of the House of Representatives, in its report to the Seventy-fourth Congress (June 21, 1935) upon the bill revising Section 77 of the Bankruptcy Act, states that the proposed bill of the Federal Coordinator of Transportation was the basis of the work of the Committee. The Committee report calls attention to various of the proposed amendments to Section 77, but says nothing about any enlargement of the jurisdiction of the bankruptcy court. The bill as submitted by the Committee to the House contains the identical language which we have quoted from the bill proposed by the Coordinator, but the words "Except as otherwise provided" were not inserted, as suggested by the Coordinator, in what had been subdivision (n) of original Section 77 and became subdivision (*l*) of Section 77 as amended on August 27, 1935.

The refusal of the Judiciary Committee and of Congress to adopt this suggestion of the Coordinator (in re-enacting in 1935 Section 77 with the proposed amendments), we regard as significant, since its adoption would have subordinated what is now subdivision (*l*) to the other provisions of Section 77 relating to jurisdiction.

As amended, then, by the Act of August 27, 1935, (c. 774, 49 Stat. 911). Section 77 contained the suggestions of the Coordinator which had the effect of making the grants of jurisdiction under Section 77 and under Section 77B identical except for the provision in Section 77 providing that process of the court shall extend to and be valid when served in any judicial district. From this legislative history, it appears that Congress, in amending Section 77, was certainly not conscious of any intent or purpose to substantially enlarge its previous grants of jurisdiction to the courts of bankruptcy with respect to the reorganization of railroads. The intent and purpose was to make Section 77 in that regard substantially, if not completely, identical with Section 77B so far as jurisdiction was concerned.

The legislative history of Section 77 is of importance in considering whether the language used by Congress in conferring jurisdiction upon the bankruptcy courts in Section 77 must be given a narrow or a liberal construction in order that it may coincide with the intent of Congress. St. Louis, Iron Mountain & South-

**8**

ern R. Co. v. Craft, 237 U.S. 648, 661, 35 S.Ct. 704, 59 L.Ed. 1160; Johnson v. Southern Pacific Co., 196 U.S. 1, 17, 25 S. Ct. 158, 49 L.Ed. 363.

■ "A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute, is not within the statute, unless it be within the intention of the makers." People v. Utica Ins. Co., 15 Johns., N.Y., 358, 381, 8 Am.Dec. 243; Territory of Hawaii v. Mankichi, 190 U.S. 197, 212, 23 S.Ct. 787, 47 L.Ed. 1016; Barrett v. Van Pelt, 268 U.S. 85, 90, 91, 45 S.Ct. 437, 69 L.Ed. 857.

■ A court of bankruptcy in proceedings under Section 77B (or under Section 77 as it existed prior to its amendment in 1935, Megan v. Continental Ill. Nat. Bank & Trust Co., 7 Cir., 86 F.2d 508) would be without jurisdiction of such a suit as this. In re Patten Paper Co., 7 Cir., 86 F.2d 761, 765; In re Prudence Bonds Corporation, 2 Cir., 75 F.2d 262, 263; In re Commonwealth Bond Corporation, 2 Cir., 77 F.2d 308, 309; First Nat. Bank v. Conway Road Estates Co., 8 Cir., 94 F.2d 736, 737, 738; In re Prima Co., 7 Cir., 98 F.2d 952, 956–958; Bovay v. H. M. Byllesby & Co., 5 Cir., 88 F.2d 990, 992; United States v. Tacoma Oriental S. S. Co., 9 Cir., 86 F.2d 363, 368; In re Williams, D.C.W.D.Tenn., 123 F. 321, 323. This is for the reasons, (1) that a Federal court which appoints a receiver in equity of the property of an insolvent debtor does not acquire jurisdiction of a claim such as that here involved against a nonresident of the district not present in the district, Bovay v. Byllesby & Co., 5 Cir., 88 F.2d 990, 992; United States v. Tacoma Oriental S. S. Co., 9 Cir., 86 F.2d 363, 368, and (2) that subdivision (o) of Section 77B limits the powers of the court of bankruptcy to such as are conferred with respect to ordinary voluntary adjudications in bankruptcy, except where a broader jurisdiction is expressly conferred or is necessarily implied; and in such a controversy as

this the bankruptcy court is without power to bring into the bankruptcy proceedings adverse claimants, whether within or without the district. Bovay v. Byllesby Co., supra (page 992 of 88 F.2d); United States v. Tacoma Oriental S. S. Co., supra (page 370 of 86 F.2d); In re Prima Co., supra (page 958 of 98 F.2d); In re Commonwealth Bond Corporation, supra (page 309 of 77 F.2d).

■ Since Section 77 as amended in 1935 and Section 77B are identical with respect to the jurisdiction of the bankruptcy courts, except that under Section 77 the courts are expressly given the power to send process outside their districts, it is apparent that if jurisdiction of this suit exists as claimed by the appellant, it must be because of the process provision of Section 77. To our minds that provision is more procedural than jurisdictional. We think it was intended to make certain that the bankruptcy court had the means for making the jurisdiction otherwise conferred upon it, with respect to the property in its custody, effective beyond the limits of the district. While, in a proceeding under Section 77, the power of a court of bankruptcy to enforce its valid orders for the safeguarding of property in its custody or under its control beyond the limits of the district was necessarily implied, as the Supreme Court held in Continental Ill. Nat. Bank & Trust Co. v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 683, 55 S.Ct. 595, 609, 79 L.Ed. 1110,[3] the question of the existence of that implied power was a debatable one until the decision in that case was announced on April 1, 1935.

■ The case just referred to was argued in February, 1935, approximately one month after the Coordinator of Transportation had sent to Congress his proposed revision of Section 77. It is a fair assumption, then, that the purpose of his suggestion relative to service of process outside the district and for the promulgation of rules therefor by the Supreme Court was intended to meet the contention which had been made in that case, name-

[3] "As has already been shown, the equity in the collateral remaining in the railroad company is property; and over this property, wherever located, the federal district court is given exclusive jurisdiction by the precise language of section 77, just quoted. As a necessary consequence of that jurisdiction, the court must have the power to preserve and safeguard the property for the benefit of the trust estate so far as that is compatible with the rights of the pledgees. Jurisdiction over the property wherever located carries with it jurisdiction to enjoin, in a proper case, interferences with the property, and this includes, by necessary inference, the power to send process to that end for service upon the persons to be enjoined wherever they may be found within the United States."

ly, that an injunction to safeguard a conceded asset of the trust estate could not be effective outside the district. It seems probable, also, that the Coordinator was aware of the advantage of having a rule of the Supreme Court regulating the service of process outside of a judicial district. We think that what the Coordinator had in mind, and what Congress intended when it adopted his suggestion for amendments to the jurisdictional provisions of Section 77, with the significant exception to which we have called attention, was that the court of bankruptcy should have every power deemed necessary to enable it to deal with the property of the trust estate, meaning the property which was in the actual or constructive possession of the debtor at the time the petition for reorganization was filed and approved, but not including property claimed for the trust estate which was in the possession of adverse claimants under substantial claims of ownership.

■■■■ To sustain the lower court's jurisdiction of this suit would do violence to the general policy of Congress that persons shall not be subjected to civil suits except in the districts of which they are inhabitants. Sec. 51 of the Judicial Code, 28 U.S.C. § 112, 28 U.S.C.A. § 112; Sec. 23 of the Bankruptcy Act, 11 U.S.C. § 46, 11 U.S.C.A. § 46; Robertson v. Labor Board, 268 U.S. 619, 627, 45 S.Ct. 621, 69 L.Ed. 1119. The language used by Congress in Section 77, in conferring jurisdiction upon the courts of bankruptcy, does not, in our opinion, indicate any intention to abandon that policy with respect to such suits as this. Compare United States v. Sweet, 245 U.S. 563, 572, 38 S.Ct. 193, 62 L.Ed. 473; First National Bank of Wellington v. Chapman, 173 U.S. 205, 214, 19 S.Ct. 407, 43 L.Ed. 669; Ex parte Crow Dog, 109 U.S. 556, 572, 3 S.Ct. 396, 27 L.Ed. 1030; In re Prima Co., supra (98 F.2d 952, 958). We think that the jurisdiction conferred by Section 77 upon the courts of bankruptcy is not to be regarded as general, plenary, nationwide jurisdiction at law and in equity over all questions incident to the collection of the claims of the debtor against third persons, but is to be considered as the traditional jurisdiction of such courts over the property of a bankrupt, wherever located, freed, however, from those limitations which made ancillary proceedings in other districts necessary, and with the powers which Federal equity courts exercise in receivership proceedings, so far as those powers may be necessary or appropriate in order to preserve and safeguard the property in the actual or constructive possession of debtors and in order to carry on their business pending reorganization.

■■■ Unquestionably, the claim of the trustee of the Missouri Pacific Railroad Company for an accounting and for the enforcement of the equitable lien asserted is an asset of the trust estate and as such is under the jurisdiction and control of the court of bankruptcy. The property upon which the lien is claimed and the persons of those who possess the property or have claims against it are not within the jurisdiction or under the control of the court of bankruptcy. The power of that court to preserve and safeguard the claim of the trustee does not carry with it the power to adjudicate his controversy with adverse and nonconsenting defendants.

The court below did not err in entering the orders appealed from, and they are affirmed.