In re GEORGIA, FLORIDA & ALABAMA R. CO.

No. 89.

District Court, M. D. Georgia, Thomasville Division.

March 6, 1945.

Harry S. Strozier and Wallace Miller, both of Macon, Ga., and Price & Poag, of Greenville, S. C., for trustee of Georgia F. & A. R. Co.

Walter A. Harris, of Macon, Ga., and Jesse E. Waid, of New York City, for Bankers Trust Co. and R. Gregory Page, trustee, under First and Refunding Mortgage of the Georgia F. & A. R. Co.

W. R. C. Cocke, of Norfolk, Va., Harold J. Gallagher, of New York City, and A. O. B. Sparks, of Macon, Ga., for Seaboard A. L. Ry. Co.

A. O. B. Sparks, of Macon, Ga., and Leonard D. Adkins, of New York City, for Seaboard Reorganization Committee.

A. A. Lawrence, of Savannah, Ga., for Fred L. Folk, preferred stockholder.

Price & Poag, of Greenville, S. C., for W. H. B. Simpson.

LOVETT, District Judge.

The first question, and a controlling one, now for decision in this case is one of jurisdiction.

The Georgia, Florida & Alabama Railroad Co., a Georgia corporation with its principal office in this district, the debtor in these proceedings, is the owner of a line of railroad the greater part of which lies in this district. For many years the Seaboard Air Line Railway Company operated this line of railroad under a long-term lease. Receivers were appointed for the Seaboard in the District Court of the United States for the Eastern District of Virginia, the court of primary receivership, with an ancillary receivership proceeding in the District Court of the United States for the Southern District of Florida. Shortly thereafter the Seaboard receivers disaffirmed the lease, and since that time they have operated the line for the account of the debtor under what is called an operating agreement. For the purpose of reorganization, the G. F. & A. has filed its petition in this court under Section 77 of the Bankruptcy Act as amended, 11 U. S.C.A. § 205, and the court has approved the petition as filed in good faith and has appointed a trustee. The trustee now seeks to have certain of its bonds which have been purchased by the Reorganization Committee of the Seaboard adjudged to be the

debtor's property. He also seeks an accounting from the Seaboard receivers.

The relief is sought against the Seaboard's Reorganization Committee and its receivers. All of them are residents of other states. They have moved to dismiss for lack of jurisdiction and on other grounds.

The history of the proceedings here and in the Virginia and Florida courts follows.

The action began in this court on the petition of Leon S. Dure, receiver of the Georgia, Florida & Alabama Railroad Company, against the Seaboard Reorganization Committee (consisting of Otis A. Glazebrook, Jr., of New York, and Joseph France and Charles Markell, both of Maryland), and the receivers of the Seaboard Air Line Railway Company (Legh R. Powell, Jr., and Henry W. Anderson, residents of Virginia). The trustee appointed subsequently in these proceedings under Section 77 has been substituted in the place of the receiver.

Primarily the petition seeks an adjudication that $1,559,000 principal amount of bonds of the debtor purchased by the Reorganization Committee with funds furnished by the Seaboard receivers are held in trust by the Committee for the benefit of the debtor on the theory that the funds used for the purchase rightly belonged to it or that the Committee was acting in a fiduciary relation to it and should have used the funds in their hands in making the purchase and, failing to do so, breached the trust. The petition also prays that the Seaboard receivers be required to account to the trustee for the net income arising from their operation of the G. F. & A. properties, that they be required to pay over to him as such trustee the amount shown to be due by the accounting less the amount advanced to the Reorganization Committee for the purchase of the debtor's bonds and that the trustee be authorized to employ an expert to go over the statements of account prepared by the staff of the Seaboard receivers in the hope that an agreement may be reached on the amount of credit in favor of the G. F. & A. and to advise the trustee as to the possibility of independent operation of the debtor's line of railroad.

The issues to be determined here arise upon motions of the defendants to dismiss the petition, to vacate the order directing service and to quash the service on the grounds of lack of jurisdiction of the subject matter and of the parties and upon the ground that no claim was stated upon which relief may be granted.

The Seaboard Air Line Railway has been in receivership in the District Court for the Eastern District of Virginia since December 23, 1930. Ancillary receivership proceedings have been pending since the same date in the District Court for the Southern District of Florida.

The Seaboard receivers appointed at that time took possession of all railroad properties then operated by the Seaboard, including all the leased lines. Among the leased lines was the G. F. & A. which had been leased to the Seaboard in 1927 for a ninety-nine year term and which continually since that time has been and now is being operated by the Seaboard receivers with no separate organization and no physical separation of revenues.

The Seaboard receivers at first paid the rentals required under the G. F. & A. lease but shortly after their appointment they were directed by the courts having charge of the Seaboard receivership proceedings to discontinue payments. Thereafter, on November 7, 1931, under a general creditor's bill, receivers were appointed for the G. F. & A. by this court, and on July 30, 1933, under a foreclosure bill, receivers were appointed by this court for the properties covered by the mortgage sought to be foreclosed. Each of the orders appointing receivers, however, directed them not to take possession of the G. F. & A. properties leased to the Seaboard until they were surrendered by the Seaboard receivers or until re-entry by the G. F. & A. receivers. In July, 1944, these proceedings under Section 77 were instituted.

In 1933, the Virginia court found the G. F. & A. lease burdensome and directed the Seaboard receivers to disaffirm it. This order was confirmed by the Florida court, and in its order the Florida court expressly reserved exclusive jurisdiction to determine all matters, including claims between the Seaboard receivers and the G. F. & A. interests, resulting from operation of the G. F. & A. by the Seaboard receivers. Pursuant to these orders the Seaboard receivers in 1934 served notice of disaffirmance upon the G. F. & A. and tendered back the property. The tender was refused. The receivers then applied to the Interstate Commerce Commission to abandon the operation of the G. F. & A. The

G. F. & A. opposed the application, and it was denied.

Pending judicial determination of the terms upon which forced operation should be continued, a settlement was negotiated and approved by the Florida court and this court providing for adjustment of the account between the Seaboard receivers and the G. F. & A. up to and through 1934 and for continued operation of the G. F. & A. upon the following terms: (1) operation should be for the account of the G. F. & A. or its receivers, (2) the General Segregation Formula of the Seaboard for separation of earnings and expenses should be used in account for earnings and deficits [1], (3) the Seaboard receivers should have a paramount lien for any deficits and capital expenditures, (4) the agreement might be terminated upon six months' notice and payment to the Seaboard receivers of the amount of any deficits or charges against the G. F. & A. properties or satisfactory security being given for such amounts, and (5) upon surrender of the property by the Seaboard receivers, termination of the Seaboard receivership, or upon request for repossession of the property by the G. F. & A. interests, all accounts between the parties should be adjusted and immediately become payable to the party having a net credit. The receiver of the G. F. & A. was made a party in the proceedings in the Florida court at or before the time this operating agreement was approved.

In 1944, the Florida court, subject to approval of the Virginia court, entered an order confirming what is now known as the Kennedy Formula, a modification of the General Formula, as the basis for determining earnings or deficits of the operation of the G. F. & A. One of the prayers of the instant petition is that the proceeding to obtain the approval of the Kennedy Formula by the Virginia court be enjoined.

In 1939, the Seaboard courts appointed a Special Master to prepare and submit a plan for its reorganization. After hearing the various interested parties and considering the plans submitted by them, the Special Master submitted his report in 1943.

It was adopted, with certain modifications, that same year, and no appeal was taken on behalf of the G. F. & A. or of any of its security holders. In drawing the plan, it was found that the sum allotted for the acquisition of the G. F. & A. in the new capitalization of the Seaboard was not sufficient to pay the principal of the G. F. & A. bonds, and, therefore, no provision was made for the First Preferred stock of the G. F. & A. to participate in the reorganization, and it was asserted that it had no value. The second preferred stock and the common stock, being junior to the first preferred, were, necessarily, also said to have no value. The Virginia court so adjudged. It was provided, however, that $750 cash could be paid for each $1,000 G. F. & A. bond [2].

Pursuant to the Special Master's recommendation, also a part of the plan, a Reorganization Committee was appointed by the Virginia court with power to carry the plan into execution. It could act, however, only subject to the approval of the court and subject to its direction.

On February 8, 1944, the Virginia court entered an order authorizing the Reorganization Committee to purchase at 75 cents on the dollar (the treatment provided in the plan) all the G. F. & A. bonds which were tendered to them at that price. The order authorizing the purchase specified that the funds used were to be turned over to the Reorganization Committee by the Seaboard receivers and were to be taken out of the unused balance of a $15,000,000 fund which was available for the retirement of debt or for other purposes in connection with the reorganization. The order recited that any sum found to be due from the Seaboard receivers to the G. F. & A. receiver resulting from operation of the G. F. & A. should be paid out of another and different fund of $6,000,000 directed to be set aside for the payment of reorganization expenses. The order further provided that no part of the payments used to acquire the G. F. & A. bonds should be charged against any amounts which might be determined to be due the G. F. & A. receiver from the Seaboard receivers. It further specifically provided that neither

[1] The provision for a formula was necessitated by the fact that the G. F. & A. line is operated as an integral part of the Seaboard System. All revenues of the system are commingled and become part of the general funds in the hands of the Seaboard receivers. No current physical segregation would be possible without an entirely separate operation of the G. F. & A. line.

[2] Guaranty Trust Co. v. Seaboard Air Line R. Co., D.C., 53 F.Supp. 672, affirmed 4 Cir., 145 F.2d 40.

the G. F. & A. nor its receiver nor any holder of its bonds nor any other security holder or creditor of the G. F. & A. would have any interest in the bonds acquired pursuant to the order. Neither the G. F. & A., nor its receiver, was a party to the proceedings in the Virginia court, though notice of the proposed action was mailed to its receiver.

The Reorganization Committee was also authorized to employ the Bank of New York as its agent for purchasing the bonds. The Committee then requested the receivers to transmit the necessary funds to the Bank of New York. The bank took up all bonds tendered, amounting to $1,559,000, and has physical custody of them at the present time.

The total funded debt of the G. F. & A. consists of $1,750,000 of these bonds. The bonds acquired by the Reorganization Committee, therefore, represent over 89% of the entire debt. The Seaboard also owns all of the common stock of the debtor.

On the hearing in this court it was made to appear that, though for a long period of time the G. F. & A. was operated by the Seaboard receivers at a deficit, during the war period of increased traffic over the line it has become, temporarily at least, an earning line; as a result there is a large credit balance in its favor with the Seaboard receivers at this time. When the Virginia court authorized the purchase of debtor's bonds at a discount from par, the credit balance is said by the debtor's trustee to have been something in excess of $1,100,000. He estimates the balance owing by the Seaboard receivers at the end of the calendar year 1944, at approximately $1,600,000. An additional amount representing the proceeds of certain abandoned track sold as salvage is also claimed as owing by the Seaboard receivers.

■ These are the facts of the case. It is the judgment of this court, however, that it has no jurisdiction either to grant or deny the prayers of the debtor's petition.

"A bankruptcy court has the power to adjudicate summarily rights and claims to property which is in the actual or constructive possession of the court. Thompson v. Magnolia Co., 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876. If the property is not in the court's possession and a third person asserts a bona fide claim adverse to the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated 'in suits of the ordinary character, with the rights and remedies incident thereto.' Galbraith v. Vallely, 256 U.S. 46, 50, 41 S.Ct. 415, 416, 65 L.Ed. 823; Taubel, Etc. Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770. But the mere assertion of an adverse claim does not oust a court of bankruptcy of its jurisdiction. Harrison v. Chamberlin, 271 U.S. 191, 194, 46 S.Ct. 467, 468, 70 L.Ed. 897. It has both the power and duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial. Louisville Trust Co. v. Comingor, 184 U.S. 18, 25–26, 22 S.Ct. 293, 296, 46 L.Ed. 413. Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court. MacDonald v. Plymouth County Trust Co., 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093." Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 156.

■ Being bound by and also being in full agreement with the quoted language of the above case decided by the Supreme Court in December 4, 1944, this court has only jurisdiction to determine the colorability of the movant's adverse claim. I am not able to say that the claim is merely colorable or frivolous. I can not determine that the funds used for the purchase of the G. F. & A. bonds were rightly funds of the G. F. & A. and that any claim to the contrary is without substance because neither the physical property of the G. F. & A. nor the receipts arising from its operation are now nor were they at the date of the commencement of the Section 77 proceedings nor for some time prior to that date either actually or constructively in the possession of the G. F. & A. Instead they were in the possession and control of the Seaboard courts as are the bonds themselves now that they have been purchased [3].

I can not say that the acquisition of the bonds was in pursuance of some sinister purpose of the Seaboard receivers and the Reorganization Committee to take over the G. F. & A. with the G. F. & A.'s own earnings and without any actual outlay of Seaboard capital, because the order of the Virginia court authorizing the purchase ex-

---

[3] Cf. Thompson v. Terminal Shares, 8 Cir., 104 F.2d 1, 5.

pressly provided the source from which the funds used for the purchase of the bonds should be taken and provided that the money used should not be charged against money due the G. F. & A. but that any money due the G. F. & A. should be paid out of a different fund.

The jurisdiction of district courts in general bankruptcy is restricted by Section 23, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 46, sub. b, which provides: "Suits by * * * the trustee shall be brought * * * in the courts where the bankrupt might have brought * * * them if proceedings under this title had not been instituted * * *." The instant suit could not have been brought by an ordinary trustee in bankruptcy by reason of this section. The G. F. & A. receiver contends, however, that this limitation of the bankruptcy court's jurisdiction does not apply when the proceedings are brought under Section 77 as amended, for there it is provided: "the court in which such order is entered shall * * * have and may exercise * * * all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity * * *. *Process of the court shall extend to and be valid when served in any judicial district.*" 11 U.S.C.A. § 205(a). (Emphasis added.)

■ It has been held, however, that Congress by enacting Section 77 did not intend the bankruptcy court to take over all litigation between the debtor and third persons[4]. The above quoted amendment to Section 77 added nothing to the jurisdiction, territorial or otherwise, already possessed by the reorganization court.

"To our minds that provision is more procedural than jurisdictional. We think it was intended to make certain that the bankruptcy court had the means for making the jurisdiction otherwise conferred upon it, *with respect to the property in its custody,* effective beyond the limits of the district.

\* \* \* \* \* \*

"To sustain the lower court's jurisdiction of this suit would do violence to the general policy of Congress that persons shall not be subjected to civil suits except in the districts of which they are inhabitants. * * * The language used by Congress in Section 77, in conferring jurisdiction upon the courts of bankruptcy, does not,

in our opinion, indicate any intention to abandon that policy with respect to such suits as this. * * * We think that the jurisdiction conferred by Section 77 upon the courts of bankruptcy is not to be regarded as general, plenary, nation-wide jurisdiction at law and in equity over all questions incident to the collection of the claims of the debtor against third persons, but it is to be considered as the traditional jurisdiction of such courts over the property of a bankrupt, wherever located, freed, however, from those limitations which made ancillary proceedings in other districts necessary, and with the powers which Federal equity courts exercise in receivership proceedings, so far as those powers may be necessary or appropriate in order to preserve and safeguard the property in the actual or constructive possession of debtors and in order to carry on their business pending reorganization." Terminal Shares case, 104 F.2d 1, 8 and 9.

■ This construction of Section 77 is confirmed by the enactment of the Chandler Act, Bankruptcy Act, Chapter X, 11 U.S.C.A. § 501, superseding Section 77, sub. b. The Chandler Act specifically provided that Section 23 of the Bankruptcy Act, 11 U.S.C.A. § 46, should not apply to proceedings for corporate reorganization unless it was otherwise ordered by the court. 11 U.S.C.A. § 502. The Chandler Act did not affect Section 77, and there has been no such amendment with respect to Section 77; therefore, that section must still be held to be subject to the limitations contained in Section 23, and, except to protect property admittedly belonging to the debtor, a proceeding such as this can not be maintained in any court other than the one in which the G. F. & A. could have sued these defendants had bankruptcy not intervened.

■ The cases relied upon by the G. F. & A. receiver to establish the paramount jurisdiction of the bankruptcy court are Gross v. Irving Trust Co., 289 U.S. 342, 53 S.Ct. 605, 77 L.Ed. 1243, 90 A.L.R. 1215, and Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599. Neither case, however, is in point, for in neither case was there a bona fide adverse claimant. Furthermore, the Supreme Court has held in Warren v. Palmer, 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118, that the rule of Gross v. Irving Trust Co. asserting the primary jurisdiction of the bankruptcy court was

---

4 Thompson v. Terminal Shares, supra, note 3.

not adopted in Section 77 as to leased lines and that the "exclusive" jurisdiction of Section 77 over the properties of a lessor did not prevent the court having prior jurisdiction over the properties of the lessee, and which was operating the properties of the lessor, from determining and enforcing any liens for deficits resulting from the operation. It stands to reason also that the court of prior jurisdiction over the properties of the lessee should conversely have authority to determine any credits in favor of the lessor resulting from the court's operation of the lessor's property.

Aside from this decision, without so directing at this time, I suggest that the trustee herein intervene in the Virginia court, and seek such relief as he may be advised he is entitled to, involving either the modification of any operating agreement or contract between the said trustee and the Seaboard receivers, and for a payment on account of any balance owing by the Seaboard receivers to the trustee—the amount having already been discussed in conference with all parties—and for such further action as the G. F. & A. trustee may think necessary to protect the interests of that railroad.

The motions to dismiss should be granted. Orders may be presented on notice.