## In re SMITH.
### No. 2560.

District Court, S. D. West Virginia.
July 30, 1942.

See, also, D.C., 23 F.Supp. 174.

Okey P. Keadle, of Huntington, W.Va., for trustee.

Walter H. Buck and Eben F. Perkins, both of Baltimore, Md., for Union Trust Co. of Maryland.

HARRY E. WATKINS, District Judge.

Three questions are involved in three petitions for review, filed by Union Trust Company, a lien creditor of R. R. Smith, bankrupt, as follows:

1. Should bankruptcy funds recovered from an insolvent bank, upon which the Trust Company had an equitable lien, be charged with any part of attorneys' fees and court costs necessarily incurred in such recovery? The Trust Company insists that such attorneys' fees and court costs should be paid out of the common or general fund.

2. Is the present trustee under any duty to take further action regarding the sale of fifty-five bonds of Columbia Gas and Electric Company, and the deposit of the proceeds of such sale by such trustee in a bank which later went into receivership, other than that which he has already taken to recover such funds?

3. The sum of $1,000 upon which the Trust Company had a lien did not earn any interest while in the trustee's hands. Should interest thereon be paid to such lien creditor out of the common fund?

This case has ·been before this court many times, and has been before the Circuit Court of Appeals of the Fourth Circuit on three previous occasions. Lamb, Receiver, v. Townshend, Trustee, 71 F.2d 590, certiorari denied 293 U.S. 602, 55 S.Ct. 118, 79 L.Ed. 694; Union Trust Company of Maryland v. Townshend, Trustee, 101 F.2d 903; Sehon-Stevenson & Co. v. Union Trust Company of Maryland, 113 F.2d 968.

A consideration of the matters arising upon these petitions for review require a summary of the proceedings had in this case. On November 30, 1931, the date of bankruptcy, Union Trust Company of Maryland was a creditor of the bankrupt, having a claim of $74,868, holding as security therefor, 1600 shares of the capital stock of the First Huntington National Bank, and what was, in 1939 after protracted litigation between the Trust Company and the trustee in bankruptcy, held to be an equitable lien on seventy-two bonds of Columbia Gas and Electric Company of the par value of $1,000 each. In Union Trust Company of Maryland v. Townshend, supra, it was finally determined that the Trust Company was not the owner of the bonds, but that by virtue of an assignment, it held an equitable lien thereon; and that the several liens against the bonds should be determined by this court, and the proceeds of the sale of such bonds distributed in accordance with such determination.

Immediately following the adjudication in bankruptcy, these seventy-two bonds were delivered to F. C. Leftwich, trustee, subject to the claim of the Trust Company and other lien claims thereon. On March 11, 1932, the trustee petitioned the referee for leave to sell the bonds. On March 15, 1932, the Trust Company filed a petition asking that the bonds and bank stock be sold and the proceeds applied on its claim. By order entered March 28, 1932, the referee directed the sale of the bonds by the trustee in bankruptcy, the order providing that the proceeds thereof be placed in a separate account and that no part thereof should be paid therefrom except upon order of the referee. The Trust Company entered objection to the entry of this order, but filed no petition asking for a review.

At various times thereafter the trustee made sale of fifty-five bonds at the market price in groups of four or five bonds at a time. The net proceeds thereof amounted to $48,489.96. Of this sum the trustee deposited $43,208.56 in the Huntington Banking and Trust Company, a regularly designated depository for bankruptcy funds. The then trustee, F. C. Leftwich, was at the time a stockholder, director, and member of the executive committee of such depository. Leftwich had no direct control of the operation of the bank for some time immediately preceding its closing, notwithstanding his official connections with the bank. Some time in the year 1931, it became apparent to the court that the bank had on deposit with it bankruptcy funds in excess of its $10,000 bond then in force, and directed that a new bond be given. Pursuant to this direction, a further bond in the sum of $40,000 was executed on April 1, 1931. Leftwich was of the opinion that the two bonds given by the bank were cumulative, and that the bank had provided a total of $50,000 security for bankruptcy funds. When the amount of his deposits as trustee had approximated that amount, he made no further deposits in that bank but made subsequent deposits, including a small part of the proceeds of the sale of the fifty-five bonds in another Huntington bank. The Huntington Banking and Trust Company was closed as insolvent on April 8, 1933, at which time there was on deposit therein to the credit of the trustee of this estate the sum of $49,616.45, of which amount $43,208.56 or 87.09 per cent thereof, represented the proceeds of the sale of these bonds, and the remainder, or 12.91 per cent thereof, belonged to the common fund of this estate.

On September 5, 1933, Leftwich, trustee, resigned and E. V. Townsend was elected trustee. At a meeting of the creditors held on that day, and pursuant to the direction of the Honorable George W. McClintic, district judge, the trustee, acting in conjunction with seven other trustees in bankruptcy having deposits in the closed depository, employed special counsel for the purpose of taking such action as should be deemed necessary to recover the funds of this estate, and to enforce bonds given to secure the same. From time to time thereafter suits were instituted and prosecuted by the trustee of every conceivable nature, through such special counsel, to recover these bankruptcy funds. A summary

162

proceeding was instituted on the theory that the funds in the hands of the receiver in excess of the amount of the bonds, were trust funds and should be returned as such to the trustees. This contention was upheld by Judge McClintic [1] but such decision was reversed by the Circuit Court of Appeals. Lamb v. Townshend, supra. Actions were instituted upon the two depository bonds. The sureties of the $10,000 bond contended that the giving of the second bond in 1931 was intended to be in lieu of the bond on which they were sureties and served to cancel the same. This contention was upheld by Judge McClintic, [1] and an appeal was taken. Pending such appeal, settlement was made by the trustee with the only remaining solvent sureties on the bond for the sum of $4,000. Judgment was taken on January 5, 1935, in the sum of approximately $45,000 against the six sureties on the $40,000 bond.

At the time of his appointment as trustee, Leftwich had given bond in the sum of $25,000 with the Hartford Accident and Indemnity Company as surety. The present trustee took the position that Leftwich had broken the condition of his bond in making deposits in the bank in excess of the amount of the depository bond, and also in permitting the funds of this estate to remain in the bank at a time when he knew, or, by reason of his connections with the bank, should have known that the bank was in a failing condition. Suit was instituted in this court upon the proceeds of the bond. In view of a decision of the Circuit Court of Appeals, Seventh Circuit (United States ex rel. Willoughby v. Howard, 87 F.2d 243) in a similar case, holding that a bankruptcy trustee was not liable for deposits made under circumstances similar to those made by Leftwich in this case, a compromise was effected with the parties to the bond for the sum of $5,000. Investigation revealed that most, if not all of the sureties on the $40,000 bond were insolvent, whereupon a settlement was effected with the sureties on this bond by payment of $10,000 in full satisfaction of the judgment of January 5, 1933. The trustee filed an involuntary petition in bankruptcy against one of the sureties to avoid preferences obtained by other creditors.

All of these settlements were made with the approval of the creditors and of the court, at meetings held from time to time, of which the Trust Company had due notice, and to none of which objection was made. There was recovered from the funds of this estate on deposit in the bank, the sum of $25,098.20, of which sum $13,091.20 was recovered from the sureties of the depository bonds of the bank and the surety on the former trustee's bond.

Expenses incurred in these recoveries, paid by the trustee under order of court, amounted to $5,338.01. Of this amount, $4,150 represented attorneys' fees, and the remainder represented court costs. The expenses were charged proportionately by the referee to the lien and common funds, that is to say, 87.09 per cent thereof, or $4,648.88, was charged against the share of the gross recoveries to which the Trust Company was entitled, and 12.91 per cent thereof against the share of the gross recoveries to which the common fund was entitled. The $1,500 attorney fee mentioned in the order of December 16, 1940, was not wholly charged against the lien fund, as stated in the Trust Company's petition for review. All general administration costs were paid out of the common fund. The common fund had a small stake in the gross recoveries. Its share was only $3,240.18. Nevertheless, the Trust Company contends that the common fund should pay the entire costs of recovery, amounting to $5,338.01. In my opinion, there is no merit in such contention. The common fund and the lien fund should each bear its proportionate share of such expense of recovery. Remington on Bankruptcy, Vol. 6, Section 2631.50; Virginia Securities Corp. v. Patrick Orchards, 4 Cir., 20 F.2d 78; Warren v. Palmer, 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118; Adair v. Bank of America, 303 U.S. 350, 58 S.Ct. 594, 82 L.Ed. 889. Without the services of counsel and court costs, these recoveries would not have been realized. A proportionate part of the money expended was for the protection and sole benefit of the lien fund. Since the Trust Company is not now entitled to recovery from the estate the amount deducted for costs and expenses of suit, it is not entitled to interest thereon, as contended in one of its petitions for review.

The second point urged by the Trust Company relates to the sale of the bonds, and the duty of the trustee to take further action regarding the deposit of the funds in the insolvent bank. The Trust

---
[1] No opinion for publication.

Company says that there was no reason why Leftwich, trustee, should have sold these bonds. Whether that is true or not, the fact remains that in a proper manner the trustee presented to the referee charged with the administration of this estate, a petition asking authority to sell the bonds for reasons stated in the petition. The matter was brought on for hearing at a meeting of the creditors, at which the trust company was represented by its counsel. After consideration of the matter, the referee ordered the bonds sold. While formal objection was noted by the trust company's attorney in the order, no further action in respect thereto was taken. No stay of the sale of the bonds was requested and no petition for review of the referee's order was filed. The trust company had insisted from the beginning that it was the owner of the bonds, and it is reasonable to believe that its objection to the sale, noted in the record, was of a formal nature to prevent any waiver of its petition claiming ownership of the bonds. The order of the referee became final within ten days after the date of the entry of such order. The action of the trustee in making sale of the bonds after such finality was entirely legal and proper. The sale continued over a period of several months, during which time no action was taken by the Trust Company seeking to set aside or vacate the authority given the trustee, and it was only long after failure of the bank that further objection was made. There is nothing the present trustee can do at the present time relating to the sale of these bonds. The trustee has pursued to a finality every avenue of recovery open to him. Suits have been brought against everyone having any legal connection with the deposit of these funds. He has sued the receiver of the bank in which the funds were deposited, all the sureties on the depository bonds, the former trustee, and the surety on his bond. The Trust Company makes no suggestion as to what the trustee has left undone, or as to what further action the trustee should take in discharge of his duties. In my opinion, the trustee and his attorney have diligently done everything possible to recover the deposited funds, and there is nothing more for them to do.

The third assignment of error relates to interest upon the sum of $1,000. By order entered February 25, 1932, the referee allowed Livezey, Hogsett & Mc-Neer, attorneys for the petitioning creditors, a fee of $1,000 to be paid when the trustee should have sufficient funds in his hands for that purpose. By subsequent order entered April 25, 1932, the referee directed the payment of the fee out of the proceeds of the sale of bonds made by the trustee. On February 21, 1942, the referee held that this fee should be a charge against the common fund of the estate, and directed reimbursement thereof from the common fund to the Trust Company. Such reimbursement was thereafter made, but no interest was paid. The Trust Company claims that it is entitled to interest. The record does not disclose that such fund earned any interest while in the trustee's hands, and, therefore, the lien creditor is not entitled to receive interest to be paid out of the common fund. Some of the lien fund was deposited by the trustee in United States Postal Savings and drew interest at the rate of two per cent per annum. Such interest actually earned upon the lien fund has been paid to the Trust Company.

For the reasons mentioned, the orders of the referee on December 16, 1940, February 21, 1942, and May 9, 1942, should be affirmed.