In the Matter of CASCO CHEMICAL CO.,
Bankrupt.

Harold C. ABRAMSON, Trustee in Bankruptcy of Casco Chemical Corporation, et al., Appellants,

v.

SUPERINTENDENCE COMPANY, Inc., et al., Appellees (two cases).

Nos. 20667, 20709.

United States Court of Appeals
Fifth Circuit.

Aug. 10, 1964.

Philip I. Palmer, Jr., James R. Alexander, Goldberg & Alexander, Palmer & Palmer, Dallas, Tex., for appellant.

John K. DeLay, Jr., Storey, Armstrong & Steger, Dallas, Tex., for appellee Excel Packing Co.

Carswell H. Cobb, Robert F. Ritchie, Ritchie, Ritchie & Crosland, Dallas, Tex., for appellee W. C. Boedeker.

Harris, Brown & Harris, Nashville, Tenn., for appellee McRedmond Brothers, Inc.

Charles F. Brown, Nashville, Tenn., Carl W. Wilson, Dallas, Tex., James W. Sargent, Wichita, Kan., Wynne, McKenzie, Jaffe & Tinsley, Dallas, Tex., for appellee Superintendence Co., Inc.

Before TUTTLE, Chief Judge, and BROWN and GEWIN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Although these cases, one in bankruptcy, the other a Civil Action, were separately filed, tried and considered and were separately briefed before us,[1] they are so intertwined that for the Court itself to avoid becoming a party to undue repetition, the cases may be separately disposed of in this single opinion. The bankruptcy case [2] challenges the Referee's denial of summary jurisdiction. The Civil Action [3] attacks the District Court's dismissal of an independent proceeding brought under F.R.Civ.P. 60(b) on the ground that it was not filed within the one year prescribed for grounds (1), (2) and (3). By this rule 60(b) proceeding, the Trustee sought to obtain a turnover of the same funds which were the subject matter of the unsuccessful bankruptcy summary proceedings. For our pur-

poses, the facts may be severely capsulated.

I.

During 1959, Casco [4] was active in the business of buying and selling tallow, soybean oil, and similar products. Among the customers purchasing these items was Bunge.[5] Casco's accounts receivable financing was handled through the First National Bank in Dallas. Under the procedure set up, Casco drew a sight draft upon Bunge for each pending sale. After inquiry and verification of the account debtor, the Bank would purchase the draft. The draft with commercial documents attached would then be presented through regular banking channels to the purchaser, Bunge. The sale and assignment of these drafts was guaranteed by Boedeker.[6]

In August and September of 1959, the Bank purchased sight drafts drawn by Casco on Bunge in a total amount of $159,330.12. All were dishonored upon presentment. The Bank thereafter instituted suit against Bunge for the collection of the accounts receivable assigned to it. After the drafts were dishonored by Bunge, but before the Bank's suit was filed, Casco assigned a portion of this same Bunge account receivable to Excel.[7] About the same time Superintendence [8] served a writ of garnishment upon Bunge in New York City. Another creditor of Casco, McRedmond,[9] also asserted some character of lien.

Bunge removed the Bank's state court suit to the federal court where it became C.A. 8353. In that proceeding Bunge filed an action of interpleader, 28 U.S.C.A. § 1335; F.R.Civ.P. 22, ad-

---

1. In the two cases, we have a total of 12 separate briefs. The record in the bankruptcy appeal in turn includes nearly a dozen other memorandum briefs filed before the Referee.

2. No. 20667.

3. No. 20709.

4. Casco Chemical Corporation, the Bankrupt.

5. Bunge Corporation.

6. Waller C. Boedeker was, during 1959, a vice president, director, and stockholder of Casco.

7. Excel Packing Company whose principal place of business appears to be in Kansas. This assignment, dated November 17, 1959, was recorded November 18, in Dallas.

8. Superintendence Company, a New York concern.

9. McRedmond Brothers, Inc., a Tennessee concern.

mitted liability for a sum ultimately fixed at $76,051.58 which it deposited in the Registry of the Court, and impleaded, among others, the claimants Boedeker, Superintendence, Excel, and McRedmond. In the meantime, the Bank called on Boedeker to honor his guaranty which he did.[10] The Bank assigned all of the accounts, drafts, etc. to him and he was substituted for the Bank in the interpleader action.

Presumably after much backing and filling, negotiation and discovery, the parties reached an agreed disposition,[11] and on October 5, 1961, the District Court entered a final judgment, consented to by Boedeker, Superintendence, Excel, and McRedmond ordering an agreed distribution of the $76,051.58.[12] Thereafter, the Clerk disbursed the funds from the Registry as prescribed in the judgment of October 5, 1961. It is that judgment which is now the subject of the rule 60(b) Civil Action.

Meanwhile on the preceding day, October 4, 1961, and without the actual knowledge of either the District Judge or any of these four claimants or their counsel, an involuntary petition in bankruptcy was filed against Casco in that very same Court. Because it was filed the day before the distribution of funds ostensibly due by Bunge to Casco, it was the Trustee's theory both in the summary and Civil Action proceedings that this was a transfer of funds belonging to the Bankrupt after bankruptcy not made for a present fair consideration and hence invalid under § 701 sub. d(1)–(5) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. d(1)–(5).

The original bankruptcy petition filed October 4, 1961, by one creditor only, alleged three acts of bankruptcy in conclusory general terms. On February 26, 1962, more than four months after October 5, 1961, an amended petition was filed. The amended petition alleged in specific terms acts of bankruptcy consisting of a fraudulent transfer under § 67 sub. d(2), 11 U.S.C.A. § 107, sub. d (2), the factual grounds therefor being the interpleader judgment of October 5, 1961, and the transfer to the four named claimants and, by reason of the same facts, a perferential transfer within four months of the filing of the petition. Thereafter on April 16, 1962, there was an adjudication by agreement and default. Subsequently, in July 1962, the Trustee instituted summary turnover proceedings against these claimants. Each claimant made express, timely objection to summary jurisdiction. In the hearings before the Referee, the claimants made two principal assertions. The first was that the original involuntary bankruptcy petition was so defective that it could not be deemed to have been filed on October 4, 1961, and hence the distribution the next day, October 5, was not a transfer after bankruptcy. The second contention was that, even assuming that October 4 was the date of bankruptcy, neither the Bankrupt nor the Court of Bankruptcy had possession of the fund on that date. By an order of February 28, 1963, the Referee formally denied summary jurisdiction. In the course of the Referee's opinion, later approved fully by the District Court,[13] the Referee held that October 4, 1961, was the date of bankruptcy, but that the funds were not

---

10. Boedeker's payment to the Bank was in the neighborhood of $198,000 and covered all of the dishonored Bunge sight drafts as well as some other items.

11. Casco, although served with process, filed no answer or appearance and was defaulted.

12.

| Claimant | Amount |
| --- | --- |
| Boedeker | $55,551.58 |
| Superintendence | 2,500.00 |
| Excel | 10,000.00 |
| McRedmond | 8,000.00 |
|  | $76,051.58 |

13. By an opinion of April 9, 1963, the District Court sustained the Referee's action and, after interim orders denying motions for reconsideration, entered a final decree June 6, 1963.

in the actual or constructive possession of the Bankrupt or the Bankruptcy Court on that date.

On February 21, 1963, just a few days before the Referee's decision, the Trustee filed the Civil Action against the Claimants Superintendence, Excel, McRedmond, Boedeker, and others under F.R. Civ.P. 60(b) to review and set aside the judgment of October 5, 1961. The complaint recited the events we have described including the distribution under the judgment of October 5, 1961. Thereafter it asserted that this "suit is an independent action to set aside the Judgment rendered [October 5, 1961] * * * for cause, and derives its jurisdiction from the original proceeding," and alleged that such judgment "rendered * * * after the bankruptcy of CASCO * * * was based upon mistake, inadvertence, surprise and excusable neglect; constructive fraud, misconduct and misrepresentation of the adverse parties; * * * is void for lack of a necessary party; and, other good and sufficient reasons exist justifying relief from the operation of said judgment." All of which reasons, it continued, "compel pursuant to Rule 60b * * * that the judgment * * * be set aside, and the fund turned over to the referee * * * for distribution * * *."

The claimant-defendants Superintendence, Boedeker, Excel, and McRedmond asserted in various ways that the Trustee had no standing since he was not a party to the judgment, urged that the action was not timely filed since brought more than one year after October 5, 1961, asserted laches generally, and denied any meritorious basis for the claim largely on the ground that the date of bankruptcy was February 26, 1962, the date of the amended petition rather than the original filing on October 4, 1961.[14] Without ever hearing any evidence, solely on the basis of pleadings and answers given in response to the Trustee's request for admissions, F.R.Civ.P. 36, the Court by brief memorandum opinion dismissed the case because the "requisites of Rule 60b have not been satisfied" since the case was not filed within one year of the judgment of October 5, 1961. If meant to be more than a declaration as a legal proposition that an action seeking such relief had to be filed within one year, the Court's conclusions undertake to find facts on which there was no evidence whatsoever.[15]

## II.

### Bankruptcy Appeal

The Trustee attacks the Referee's order, confirmed by the District Judge, holding that this was not a case for summary jurisdiction. This attack rests on the simple assertion that the fund ($76,051.58) was in the actual possession of the Bankrupt Casco since it was in the immediate, direct, actual and exclusive physical custody of the Bankruptcy Court.

Since the Clerk of the United States District Court for the Northern District

14. The defendant Excel also filed a motion to dismiss for want of personal jurisdiction over this Kansas-based defendant and absence of the requisite $10,-000 amount in controversy.

15. After reciting briefly the developments, the date of the bankruptcy as October 4, 1961, and the standing of the Trustee to bring the suit, the memorandum opinion stated:

"It is to be conceded, of course, that there are equities in favor of any creditor who does not participate in the division of the assets. However the law looks with preference upon the diligent. Those creditors that did not participate could hardly have escaped knowledge of the fact that the company was going through bankruptcy. They should have acted at least within the year following in order to assert their claims within the law.

"Rule 60b recognizes that proper administration of justice requires an end to litigation. Where the substantive basis for relief is found in 60b(1) (2) or (3), as is here the case, that rule specifically provides that relief must be sought within a reasonable time not to exceed one year. The judgment complained of was entered on October 5, 1961. The present action was commenced on February 21, 1963. The requisites of Rule 60b have not been satisfied and the case is dismissed."

of Texas in his official capacity had possession of the fund in the Registry, and the District Court is the Court of Bankruptcy, § 2, sub. a(9), (10), 11 U.S.C.A. § 11, sub. a(9) (10), the Trustee reasons that this is all sufficient. He bases this on the general proposition that property is deemed in the actual possession of the Court of Bankruptcy when an officer of the Court is in actual, physical possession of it whether such officer be a trustee, receiver or judicial representative.[16]

We agree with the Court below. For there to be actual possession of the property by the Bankruptcy Court, the property must be reduced to actual possession by "the trustee or * * * some other officer of the Bankruptcy Court as the property of the bankrupt." 2 Collier, Bankruptcy § 23.05[2], at 471 n. 10 (14th ed. 1962). See also Palmer v. Warren, 2 Cir., 1939, 108 F.2d 164, aff'd 1940, 310 U.S. 132, 60 S.Ct. 865, 80 L.Ed. 1118; In re Mt. Forest Fur Farms of America, 6 Cir., 1941, 122 F.2d 232; In re Georgia, Florida, & Alabama R.R., M.D.Ga., 1945, 60 F.Supp. 24. The fact that the Clerk had the funds, as he most assuredly did, and that he held them solely as Clerk, and that as Clerk he was also Clerk of the Court of Bankruptcy does not satisfy the essential element that the funds were held *as the property of the Bankrupt.* The funds had not been deposited as those belonging to the Bankrupt. They were funds initially of Bunge and as to which Bunge asserted a number of parties, including Casco and the four identified claimants, were making adverse claims. The fund having originated in the Bunge interpleader action, neither the Clerk nor the Judge, for that matter, consistent with F.R.Civ.P. 67 and 28 U.S.C.A. §§ 2041 and 2042, had any lawful power to dispose of these funds to the use of the Bankrupt, or the Bankrupt's creditors to the exclusion of all others. The Court, and thereafter the Clerk under direction of the Judge, holds only for those persons judicially found by the Court to be entitled thereto. Viewed in this light, sense comes from what would otherwise be a curious statement that "money in the registry of the federal courts is by law neither in the hands of the clerk nor of the judge." 7 Moore, Federal Practice par. 67.06, at 2208–09 (2d ed. 1955). The law, in order to explain away anything so physically positive as the absolute stranglehold of the Clerk on funds in the Registry, occasionally casts it in terms of a trust under which the Court is bound to deliver the funds to the party rightfully entitled thereto after hearing and adjudication, and pending such determination "the proceeds in * * * the case are not by law in the hands of the clerk nor of the judge, nor is the fund subject to the control of the clerk." The Lottawanna, 1874, 87 U.S. (20 Wall.) 201, 224, 22 L.Ed. 259; see also Osborn v. United States, 1876, 91 U.S. (23 Wall.) 474, 478, 23 L.Ed. 388.

Without approving or disapproving Glens Falls Ins. Co. v. Strom, D.C.Calif., 1961, 198 F.Supp. 450, we think these considerations compelled the holding that the funds were not in the actual possession of the Bankrupt or the Bankruptcy Court on October 4, 1961. That being so, denial of summary jurisdiction was imperatively required. In the complications just vaguely indicated by two records which contain not a single stitch of sworn testimony, the claims of these adverse claimants were certainly more than colorable. Plenary proceedings, either direct or by way of the attempted rule 60(b) suit or motion, or both, was the sole route open for the Trustee. See American Mannex Corp. v. Huffstutler, 5 Cir., 1964, 329 F.2d 449; South Falls Corp. v. Rochelle, 5 Cir., 1964, 329 F.2d 611.

16. The Trustee urges Trailmobile, Inc. v. Wiseman, 6 Cir., 1957, 244 F.2d 76; Buss v. Long Island Storage & Warehouse Co., 2 Cir., 1933, 64 F.2d 338; Magill Weinsheimer Co. v. Sykes, 9 Cir., 1930, 44 F.2d 334. Although supporting the general proposition advanced by the Trustee, these cases are of absolutely no help here.

· The only other matter presented is the attack by the claimants on the Referee's finding, confirmed by the Judge, that the date of bankruptcy was October 4, 1961. This is resisted by the Trustee. Each recognizes that this may have substantial effect on the Trustee's rights when and as a plenary action is heard. The argument revolves around the sufficiency of the initial bankruptcy petition October 4, 1961, and whether the amendment of February 26, 1962, relates back.

We are of the view that although this was an interim factor on which the Referee had to make at least a tentative assumption upon which then to determine whether the funds were in the actual custody of the Bankruptcy Court, the conclusion that the Clerk's custody was not possession by the Bankruptcy Court is not dependent on that date. In our review of the question of actual possession, disposed of above, we have not had to pass upon the date and until it is necessarily drawn into question, our "case or controversy" function dictates that we express no view.

It follows, therefore, that in the bankruptcy appeal, the judgment is affirmed in all respects.

## III.

### Civil Action Appeal

In view of the action of the District Court, see note 15, supra, we have at this stage a single, simple question. That question is whether the one-year limitation in F.R.Civ.P. 60(b) (1), (2), (3) likewise bars an independent action.[17] And yet the parties insist on arguing, briefing and re-rebriefing at length a number of matters not yet presented, and in no way yet determined by the District Court.

■ At the outset, before discussing these extraneous matters, we think that in testing its legal sufficiency under the test articulated in Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Arthur H. Richland Co. v. Harper, 5 Cir., 1962, 302 F.2d 324, it is too early to read the complaint as though it is confined to grounds (1), (2), and (3) of rule 60(b). If there are uncertainties from these general allegations, there are ample means within the arsenal of pre-trial discovery, interrogatories, requests for admission, depositions, and the like, to ascertain just what is charged, especially under the broad language of "other good and sufficient reasons * * * justifying relief from the operation of said judg-

17. F.R.Civ.P. 60(b): "(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and the bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." As amended December 27, 1946, effective March 19, 1948; December 29, 1958, effective October 20, 1949.

ment" which might well encompass grounds (4) and (6).[18]

■ One of these matters is the question of laches apart from the asserted mandatory one-year bar of rule 60(b). Although the Court's opinion, note 15, supra, sounds a general tone of criticism for delay, there is simply no evidence in the record that would either permit or support such action at this stage. We have pointed out that laches is more than delay. "It is time plus prejudicial harm, and the harm is not merely that one loses what he otherwise would have kept, but that delay has subjected him to a disadvantage in asserting and establishing his claimed right or defense." Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, 865, 1959 AMC 148; Vega v. The Malula, 5 Cir., 1961, 291 F.2d 415, 418, 1961 AMC 1698.[19] Of course a rule 60(b) proceeding by motion or independent action calls for a delicate adjustment between the desirability of finality and the prevention of injustice. An equitable doctrine, laches must certainly reckon with actualities which would here include positive knowledge gained by these claimants from the Trustee's application of July 3, 1962, for a turnover order in the bankruptcy proceeding that these distributions under the October 5, 1961, judgment were now suspect. That was a warning that alerted all to the certainty that this would bring into question for full development all of the immediate facts bearing on the debts due the claimants, the circumstances of their assignments, the necessity for or sufficiency of any recordations, and their rights, legal or equitable, in the Bunge fund.[20]

■ The attack by all on the right of the Trustee to institute the action is groundless. The rule itself extends the privilege to "a party or his legal representative" and with the extraordinary powers and status which the Bankruptcy Act vicariously attributes to the Trustee, certainly the Trustee has standing to institute the action or motion with the right to relief being determined ultimately by the facts.

Likewise argued by some is the question of the date of bankruptcy, October 4, 1961, or February 26, 1962. This goes to the merits of the rule 60(b) proceeding which the trial Judge never reached since he held the action instituted too late. Some of the claimants argue vigorously that the Trustee had no § 70 rights because the Bunge indebtedness was due, not Casco, but the several assignees including the Bank, Excel, and Superintendence. On this theory, they then press heavily, Adelman v. Centaur Corp., 2 Cir., 1944, 145 F.2d 573. By like reasoning, they refute the assertion in the rule 60(b) complaint that the judgment of October 5, 1961, was void for want of an indispensable party, namely, the Trustee. But these matters again go to the merits for determination on evidence heard either on a trial or by summary judgment establishing the absence of any genuine controversy over material facts. See Duke v. Sun Oil Co., 5 Cir., 1963, 320 F.2d 853; Smoot v. State Farm Mut.

18. In the process of this exploration, it should be kept in mind that rule 60(b) is to be given liberal construction. United States v. Gould, 5 Cir., 1962, 301 F.2d 353; Michigan Surety Co. v. Service Machinery Corp., 5 Cir., 1960, 277 F.2d 531; Serio v. Badger Mut. Ins. Co., 5 Cir., 1959, 266 F.2d 418, cert. denied, 361 U.S. 832, 80 S.Ct. 81, 4 L.Ed.2d 73; 3 Barron & Holtzoff § 1332 n. 9 (Wright Supp.1963).

Ground (6) is, and is meant to be, flexible, and in its operative application relief may be broadened by virtue of grounds (1), (2), (3). See, e. g., Bros Inc. v. W. E. Grace Mfg. Co., 5 Cir.,

1963, 320 F.2d 594 (bringing intrinsic as well as extrinsic fraud within (6)); 3 Barron & Holtzoff § 1326 n. 64.1, § 1329 nn. 72.7, 72.9 (Wright Supp.1963).

19. The numerous decisions of this Court applying these principles are collected in McConville v. Florida Towing Corp., 5 Cir., 1963, 321 F.2d 162, 167 n. 5, 1963 AMC 1456.

20. And despite our holding that summary jurisdiction was not available, the contention was sufficiently well founded that the pursuit of that theory by the Trustee does not establish lack of diligence as a matter of law.

Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525; Gulf Oil Corp. v. Wright, 5 Cir., 1956, 236 F.2d 46; Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690; Garrett v. American Airlines, Inc., 5 Cir., 1964, 332 F.2d 939 [June 5, 1964]; River Brand Rice Mills, Inc. v. General Foods Corp., 5 Cir., 1964, 334 F.2d 770 [July 10, 1964].[21]

■ With all of these interesting controversies to one side,[22] the answer to the simple question is, at least for this Court, likewise simple. We have clearly held that when the 60(b) relief is sought by an independent action, there is no time limit save laches on when the action may be brought. West Virginia Oil & Gas Co. v. George E. Breece Lumber Co., 5 Cir., 1954, 213 F.2d 702; 3 Barron & Holtzoff § 1331, at 432 (Wright ed. 1958). And "where it is possible to bring an independent action attacking the judgment, rather than proceeding by motion, the time limits of the rule do not apply." Id. § 1330, at 423. This result rests on the saving provision of rule 60(b) which is intended "to preserve the power of the courts to entertain remedial actions for relief in circumstances where the old writs, now abolished, would have been available * * *" which, although putting "an end to the niceties of the writs * * * retains their substance * * *" so that "relief is now available, either by motion or in an independent action, in any situation in which it could have been had by one of those common law remedies." 3 Barron & Holtzoff § 1331, at

430; Oliver v. City of Shattuck ex rel. Versluis, 10 Cir., 1946, 157 F.2d 150, 152–53.

The one-year limitation of F.R.Civ.P. 60(b) was not a time bar to this independent proceeding. The Court was therefore clearly in error in dismissing it on this ground, and the judgment of dismissal must be reversed with the cause remanded for such further and other proceedings, see text accompanying e. g. note 21, supra, as are appropriate and consistent with this opinion.

No. 20667—Affirmed.

No. 20709—Reversed and remanded.

---

21. Another contention asserted solely by Excel, is its motion attacking jurisdiction over the person of the defendant. Obviously, the Court did not pass on that. We intimate no conclusion except to recognize the substantial nature of the attack. With the 60(b) proceeding instituted as an independent case, not by motion, there might be considerable doubt that jurisdiction over the nonresident defendant in the initial case would survive for an indefinite period in the future up to the point of a laches cutoff. But see 3 Barron & Holtzoff § 1331 n. 6.1, at 162 (Wright Supp. 1963); Martina Theatre Corp. v. Schine Chain Theatres, Inc., 2 Cir., 1960, 278

F.2d 798. On the other hand, the admissions indicate Excel performed a number of contracts in Texas which might subject the defendant to its long arm statute. See Lone Star Motor Import, Inc. v. Citroen Cars Corp., 5 Cir., 1961, 288 F.2d 69; Thode, In Personam Jurisdiction; Article 2031B, the Texas "Long Arm" Jurisdiction Statute; And the Appearance to Challenge Jurisdiction in Texas and Elsewhere, 42 Texas L.Rev. 279 (1964); Delray Beach Aviation Corp. v. Mooney Aircraft, Inc., 5 Cir., 1964, 332 F.2d 135 [May 6, 1964].

22. For an authoritative discussion of these matters relating to the merits, see 3 Barron & Holtzoff §§ 1325, 1326, 1329.