**RELIABLE MARINE BOILER REPAIR, INC., Plaintiff,**

v.

**The SUM OF $35,000.00, in the possession of Frank B. Hall & Co., Inc.,**

**RELIABLE MARINE BOILER REPAIR, INC., Plaintiff,**

v.

**FRANK B. HALL & CO., Inc., Defendant,**

**The Mastan Company, Incorporated, Claimant.**

**No. 67 Civ. 1066.**

United States District Court
S. D. New York.

July 12, 1967.

---

8. See 29 U.S.C. § 157; see also 29 U.S.C. § 151; N.L.R.B. v. Pennsylvania Greyhound Lines, 303 U.S. 261, 265–266 (1938).

Harry D. Graham, New York City, for plaintiff.

Zock, Petrie, Sheneman & Reid, New York City, George D. Byrnes, New York City, of counsel, for claimant.

## MEMORANDUM

FRANKEL, District Judge.

The plaintiff, invoking, without statutory citation, the court's jurisdiction "founded upon the admiralty and maritime nature and character" of its claim, filed its complaint "in rem and in personam" against Frank B. Hall & Co., Inc., an insurance broker and average adjuster with offices in New York City, and as-

sertedly against a sum of $35,000 being held by the defendant. According to the complaint, in September of last year, the steamship Sapphire Sandy sustained serious port boiler damage and was required to anchor off Leonardo, New Jersey, awaiting repairs. The plaintiff, in the business of installing and repairing boilers, was requested to take on the job. Not wishing to rely upon the credit of the vessel, which was apparently laden already with the liens of numerous creditors, the plaintiff agreed with the shipowner's representatives and the hull underwriters to make the repairs in exchange for a promise of payment out of the hull insurance proceeds to be made directly by the underwriters through defendant Hall as broker. Having done the work and rendered the vessel seaworthy, plaintiff, on October 11, 1966, submitted to Hall its bill in the amount of $39,260.08. Hall in turn forwarded the claim to the several underwriters, who thereafter sent to Hall their respective contributions "on account" to make up a total of $35,000. Then, the complaint alleges, plaintiff demanded the $35,000 from Hall, and, when delivery was refused, brought this suit.

Proceeding, then, by warrant of arrest and summons to show cause, purportedly under Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims, plaintiff sought payment of the $35,000 into the registry of the court. The defendant Hall appeared on the return day, announced that it was merely a "stakeholder" with no claim of right to the money, and expressed no opposition to paying it into court. Accordingly, the $35,000 was deposited into the court's registry, where it now resides.

The claimant, Mastan Company, Incorporated, also appeared, by counsel, on the return day. It submitted (1) a document, dated March 27, 1967, entitled "Claim to Res," and (2) another paper,

dated March 28, 1967, styled "Restrictive Appearance," which it subsequently conceded to be without legal significance. Mastan has now brought an unusual motion for vacatur of the arrest and an order "directing the release of the [$35,-000] from the registry of this Court * * *." The motion is advisedly described as "unusual" in that Mastan does not ask release of the money *to itself*, but prays that it be put back into the hands of defendant Hall, which has not asked for it, does not appear to want it, and has disavowed any claim of right to or interest in the fund.

The asserted grounds and theory of the motion may be summarized as follows:

(1) Mastan holds a first preferred mortgage on the Sapphire Sandy and is entitled to the hull insurance proceeds, including the $35,000 lodged here.

(2) Mastan wishes to have the foregoing claim adjudicated, and "would be pleased to vindicate its right of ownership * * * in this Court,"[1] but deems itself compelled to forego such an opportunity because, Mastan says, the court lacks "jurisdiction over the subject matter."

(3) The court's incurable lack of jurisdiction stems from a basic defect in the pending suit, namely, that plaintiff had and has no basis for proceeding *in rem*.

(4) Hence, while Mastan deems itself obliged to refrain from claiming the money for itself, it has "an interest in the property" sufficient under our local Admiralty Rule 13[2] to seek vacatur of the attachment and return of the $35,000 to the disinterested non-owner, defendant Hall.

What would happen to the fund after its return to Hall—and how, whether, or where rightful ownership would ever be

---

1. Memorandum of Law in Support of Claimant's Motion, p. 7.

2. "Where property is arrested or attached, any person claiming an interest in the property arrested or attached, may, upon evidence showing any improper practice or a manifest want of equity on the part of the plaintiff be entitled to an order requiring the plaintif to show cause instanter why the arrest or attachment should not be vacated."

determined—Mastan has not ventured to suggest. Its professedly single concern is for the purity of the court's jurisdiction, to be preserved by summarily expelling from the courthouse a fund which the court holds willy-nilly but must, according to Mastan, cast away instantly without deciding who rightfully should have it. The motion is not meritorious.

■ 1. To begin at a narrow beginning, the claimant has misconceived our Admiralty Rule 13. It is true that the Rule says literally only that a person "claiming an interest" may require a plaintiff "to show cause instanter why the arrest or attachment should not be vacated." It does not say that the claimant must be seeking return of the property *to himself*. It does not in terms preclude one person from seeking release of the property to another having a right to it. Perhaps in some suitable case, that sort of endeavor will be deemed appropriate. But what the Rule does not say—and will not now be read to allow—is that one party (Mastan) will be permitted to invoke the procedure in order to have the property foisted upon another (Hall) who does not claim or even appear to want it.

2. The claimant's view that plaintiff had no right to proceed *in rem* is at best highly debatable. Cf. United States v. Freights, etc., 274 U.S. 466, 47 S.Ct. 666, 71 L.Ed. 1156 (1927). Assuming it is correct, however, the motion must be denied because Mastan's basic notions on the subject of jurisdiction are erroneous.

■ Treating only the *in personam* aspect of plaintiff's suit, the course of events would entitle and require the court to determine who has a right to the money—i. e., to take jurisdiction and adjudicate upon it—rather than merely to hand it over to someone who denies any right to it. To put the matter on a formally ruly course, there is no difficulty in treating this case as falling under Fed.R.Civ.P. 67, which provides for a deposit in court by any "party" of money or property the disposition of which may be in dispute. There is no question that

defendant Hall is a party; that the court has jurisdiction over Hall; that this defendant has in effect deposited the money; and that Hall itself makes no complaint about the mode of proceeding that led to the deposit. To be sure, some remedial action, at Hall's instance, might be warranted if Hall were objecting to plaintiff's use of the "arrest" device and could show improprieties in that procedure. But there is no such objection. The money is here. The contesting claimants are here. If casting the backdrop in terms of Rule 67 does not reflect the normal operation of that provision, it surely does not deviate from the mandate of Fed.R.Civ.P. 1 that construction of all the Rules should be designed "to secure the just, speedy, and inexpensive determination of every action."

■■ 3. In any event, belated categorization of the procedural steps under Rule 67 or any other rubric is not essential to the ultimate denial of claimant's motion. For however the procedural moves may be rationalized, there is a primitive and fundamental principle of jurisdiction that is overlooked by the claimant. This is, of course, the hard and decisive fact of *possession* by the court—a most elementary basis upon which the court is empowered, and required, to exercise the "right to say" (jurisdiction) where the *res* belongs. Gumbel v. Pitkin, 124 U.S. 131, 144–145, 146–147, 154, 156, 8 S.Ct. 379, 31 L.Ed. 374 (1888); Lammon v. Feusier, 111 U.S. 17, 19–20, 4 S.Ct. 286, 28 L.Ed. 337 (1884); Cooper v. Reynolds, 77 U.S. (10 Wall.) 308, 317, 319, 19 L.Ed. 931 (1870); Bank of Hawaii v. Benchwick, 249 F.Supp. 74, 78, 79, 80 (D.Hawaii 1966). That basic obligation, inherent in the court's very functioning as a court, is inconsistent with the claimant's notion that the court should simply cast the money away without deciding who has a right to take it. "A court, which has custody of the res, must at some time surrender it, and it can know to whom it should deliver only in case it either decides the right to possession itself, or awaits the action of such other compe-

tent tribunal as the claimant may choose." Palmer v. Warren, 108 F.2d 164, 166 (2d Cir. 1939) (L. Hand, J.), aff'd, 310 U.S. 132, 60 S.Ct. 865, 84 L. Ed. 1118 (1940).

■ There is no suggestion of any other competent or available tribunal. The money and the controversy attending it are both inescapably here. The duty of decision is likewise in this court.

4. From the submissions before the court, it appears likely that the only contest over the $35,000 is between the plaintiff, Reliable, and the claimant, Mastan. The pleadings already on file are sufficient to outline their respective claims. As to the named defendant, Hall, its surrender of the money without a contest tends to reenforce the view that the two other parties are the only ones with colorable claims; presumably, if others have a right to the money, Hall's relinquishment of it might leave this defendant to confront their claims at some other time or place.

■ Nevertheless, having acquired an *in rem* jurisdiction at plaintiff's instance, the court, out of abundant caution, ought to take reasonable measures to protect all conceivable interests in the *res*. Accordingly, it seems fitting in the circumstances to require that plaintiff publish appropriate notice of the proceeding. The order to be entered herein will provide, therefore, for the publication of notice by the plaintiff on one day in each of two successive weeks in The New York Times in accordance with Rule C(4) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Rule 3 of this court's Rules for Admiralty and Maritime Claims. In addition to the other information required by those Rules, the notice will state that claimants must file their claims and their answers not later than twenty days after the second publication date of such notice.

Settle order denying claimant's motion and incorporating the form of notice to be given in accordance with what has been written above.