In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

In re **UNITED NEW JERSEY RAILROAD AND CANAL COMPANY,** Secondary Debtor.

No. 70–347–A.

United States District Court,
E. D. of Pennsylvania.
March 11, 1974.

See also D.C., 360 F.Supp. 1281.

7. (n.CA 3–5898–C, January 21, 1974).

———◆———

James E. Howard, John F. DePodesta, and Carl Helmetag, Jr., Philadelphia, Pa., for the Trustees, PCTC.

Covington & Burling, by W. Crosby Roper, Jr., Washington, D. C., for United New Jersey RR & Canal Co.

Gratz, Tate, Spiegel, Ervin & Ruthrauff, by Wilbur Bourne Ruthrauff, Philadelphia, Pa., for Richard Joyce Smith, trustee, NY, New Haven & Hartford RR Co.

John P. Sheridan, Jr., Deputy Atty. Gen., for State of New Jersey.

Elkind, Lampson & Sable, by Arnold B. Elkind, New York City, for Walter Schloss Associates.

Morgan, Lewis & Bockius, by John N. Schaeffer, Jr., Peter L. Koury, and R. Bruce Whitney, Philadelphia, Pa., for the Fidelity Bank.

## MEMORANDUM AND ORDER NO. 11

FULLAM, District Judge.

The State of New Jersey and certain minority shareholders of United New Jersey Railroad and Canal Company (UNJ) seek dismissal of the UNJ's petition for reorganization, or transfer of the case to another district.

UNJ is a New Jersey corporation which owns various lines of railroad in the State of New Jersey, including most of the New Jersey portion of the Penn Central main line between Washington, D.C. and Boston (commonly known as the "Northeast Corridor"). In 1871, UNJ leased all of its properties to a predecessor of Penn Central for a term of 999 years. Of the 212,404 shares of UNJ stock outstanding, Penn Central owns 114,964, or 54.13%. Penn Central has been operating and is operating the rail properties of UNJ.

Under the terms of the lease, Penn Central was to pay as rent the following items: $10 per share of outstanding capital stock, all taxes assessed against

UNJ and its property, and the corporate expenses of UNJ not exceeding $10,000 per year. In addition, Penn Central assumed liability for interest and sinking fund payments upon UNJ's debt, and certain obligations for payment or refunding of maturing debt.

Since Penn Central entered reorganization on June 21, 1970, no payments of any kind have been made under the lease. The bonded indebtedness of UNJ is $28,310,000, of which $1,824,000 matured February 1, 1973, and $13,897,000 matured October 1, 1973. Sinking fund payments in the amount of $90,000 are in default, and interest in default totals $3,045,337. Unpaid state and local taxes total approximately $10 million.

On the date UNJ filed for reorganization, it had unrestricted cash assets in the total amount of $80. A total of $192,000 is being held in escrow, but the rights of UNJ therein, and the proper payee thereof, have not been adjudicated.

From the undisputed facts set forth above there emerges the equally undisputed conclusion that UNJ is unable to meet its debts as they accrue. It is also clear that Penn Central Transportation Company, the principal Debtor, owns a controlling interest in UNJ, so that, if any filing under § 77 was to be made by UNJ, filing in this district for reorganization as part of or in connection with the reorganization of Penn Central was authorized by the statute, § 77(a).

█ At the hearing, counsel for the State of New Jersey argued that the petition of UNJ was filed in bad faith, and that continuation of the proceeding in this Court would be fraudulent, because he apparently believed that this would somehow make UNJ's assets become the assets of Penn Central, causing UNJ's properties to be devoted to payment of Penn Central's debts, to the detriment of UNJ's obligations. This view is, of course, totally erroneous. Penn Central does not own UNJ's assets, but merely 54.13% of the stock. Only Penn Central's assets (the stock, and any possible claims Penn Central may eventually

have against UNJ if the lease is disaffirmed and subsequent accounting shows a balance due Penn Central for loss operations; or Penn Central's leasehold interest if the lease is affirmed) will become available to satisfy Penn Central's debts.

█ A second argument advanced by the State of New Jersey is that, as a matter of statutory construction, UNJ is not entitled to file in this proceeding under § 77(a), because, since it is not actually conducting railroad operations, it does not meet the definition of a "railroad" under the statute. This argument is plausible, if one were to adhere to a literal and narrow interpretation of the definition of "railroad corporation" in § 77(m), *viz*: "Any common carrier by railroad engaged in the transportation of persons or property in interstate commerce." However, "transportation" is broadly defined, in the related provisions of the Interstate Commerce Act, 49 U.S.C. § 1(3)(a) to include facilities for shipment or carriage. As the owner of such facilities, UNJ is subject to regulation by the ICC and is, in a broad sense, engaged in transportation by reason of the operations of its lessee.

█ It has always uniformly been held that lessor railroads may reorganize under § 77 and, in the case of lessors owned by the lessee, in the same proceeding as the parent. This was true before the 1935 amendment, *e. g.*, In re Chicago, Rock Island & Pacific Ry., 50 F.Supp. 835 (N.D.Ill.1943) and Missouri Pacific R. R., 239 ICC 7 (1940). And it remains true since that date. For example, in Callaway v. Benton, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949), it was stated (n. 13, at pp. 142–143, 69 S.Ct. at p. 442):

"Under the provisions of § 77, as amended in 1935, a lessor railroad can be reorganized in connection with, or as a part of the plan of reorganization of the debtor-lessee only if a majority of its capital stock is owned by the debtor. § 77(a). When § 77 was first enacted in 1933, a lessor could also be

reorganized in the lessee's proceeding if the debtor operated substantially all of the properties of the lessor, but this provision was not reenacted . . . . "

Examples of non-operating lessor companies reorganizing under § 77 are found in Freeman v. Mulcahy, 250 F.2d 463 (1st Cir. 1957), cert. denied, Boston & Providence R. Corp. v. New York, N. H. & H. R. Co., 356 U.S. 939, 78 S.Ct. 781, 2 L.Ed.2d 813 (1958) and Warren v. Palmer, 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118 (1940).

I conclude, therefore, that the UNJ is a "railroad" within the meaning of § 77. Since the Penn Central owns a controlling share of the UNJ stock, the petition was properly filed in this district, under § 77(a). Such filing seems particularly appropriate in this case, since the principal office and headquarters of UNJ, and most of its records, are located in Philadelphia.

The State of New Jersey contends, nevertheless, that the case should be transferred to a United States District Court in the District of New Jersey. A principal basis for this argument appears to be the misapprehension as to the legal situation discussed earlier in this Memorandum. The legal rights of the parties remain the same, regardless of whether UNJ is to be reorganized in this Court or elsewhere. But the argument also appears to be based, to some extent, upon a general feeling of frustration common to many lessor interests in the Penn Central system. If the Penn Central were to resume its payments under the lease, the UNJ's financial problems would disappear. Or, if the lease were disaffirmed and the properties somehow freed of the burden of maintaining rail service, UNJ's problems would likewise disappear. These propositions, however plausible initially, contain a large element of wishful thinking. It must be borne in mind that when UNJ leased all of its properties to Penn Central for 999 years, the transaction had many of the aspects of a sale, with the price to be paid in installments.

In such a situation, when the purchaser goes into bankruptcy, the seller can scarcely expect to avoid problems relating to the bankruptcy. It should also be remembered that, so long as Penn Central has the obligation of maintaining rail service over the UNJ properties, those properties cannot be expected to be readily freed from the burdens involved.

■ In short, while the ultimate treatment to be accorded the creditors and shareholders of UNJ may, and probably will, be significantly different from the treatment to be accorded Penn Central's creditors, the timing of the ultimate resolution of the two sets of problems must necessarily be closely related. In my judgment, all that would be accomplished by transferring the UNJ proceeding elsewhere would be to increase the expense, and greatly increase the complexity, of the litigation.

The State of New Jersey also advances arguments of bad faith based upon the fact that the petition was filed two days in advance of termination of a 14-day notice provision prescribed by Order No. 170 in the Penn Central proceeding. The reasons for this are discussed in the Memorandum which I filed in connection with Order No. 1 in the UNJ proceeding, and need not be repeated here. I remain convinced that there is no merit in this argument.

UNJ challenges the standing of the minority shareholders to object to the § 77(a) filing, since the statute contemplates objections only on behalf of "any of the creditors." The minority shareholders contend that, as such, they are actual or potential creditors of UNJ. Since all of the arguments sought to be advanced by the shareholders were also advanced by the State of New Jersey, and have been disposed of above, it is unnecessary to resolve the issue of standing of Walter J. Schloss Associates. At the very least, it was within the discretion of the Court to permit that firm, in its own right, to be heard on the subject. This, of course, does not mean that this firm is authorized to represent

other minority shareholders. See § 77(p).

## ORDER NO. 11

And now, this 11th day of March, 1974, the objections of the State of New Jersey and Walter J. Schloss Associates to the Petition for Reorganization, and their respective Motions to Dismiss the proceedings or to transfer the proceedings to a district court in the District of New Jersey, are respectively denied.