In the Matter of The **NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY**, Debtor.

Nos. 372, 373, 374, Dockets 71–1903, 71–1929, 71–2024.

United States Court of Appeals, Second Circuit.

Argued Jan. 3, 1972.

Decided March 17, 1972.

Charles A. Horsky, Washington, D. C. (Brice M. Clagett, Covington & Burling, Washington, D. C., Edwin K. Taylor, John F. DePodesta, Philadelphia, Pa., on the brief), for appellants Penn Central Trustees.

Shaun S. Sullivan, Wiggin & Dana, New Haven, Conn., for appellant Penn Central Transp. Co.

Edward Roberts, III, New York City (Frank H. Heiss, Robert L. Crawford, Kelley, Drye, Warren, Clark, Carr & Ellis, New York City, on the brief), for appellant Manufacturers Hanover Trust Co., as Mortgage Trustee.

Joseph Auerbach, Boston, Mass. (Morris Raker and Nancy F. Gans, Sullivan & Worcester, Boston, Mass., James W. Moore and Joseph W. Bishop, Jr., New Haven, Conn., on the brief), for appellee Richard Joyce Smith, Trustee of New York, New Haven & Hartford R. Co.

Lawrence W. Iannotti, New Haven, Conn. (Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn, on the brief), for appellee Lawrence W. Iannotti, Successor Trustee under Debtor's First and Refunding Mortgage.

Lester C. Migdal, New York City (Lawrence W. Pollack, Migdal, Low, Tenney & Glass, New York City, on the brief), for appellee New York, New Haven & Hartford R. Co. First Mortgage 4% Bondholders Committee.

Stuart N. Scott, New York City (Joseph Schreiber, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, on the brief), for appellee Chase Manhattan Bank (N.A.) as Trustee under Debtor's General Income Mortgage.

Before LUMBARD, HAYS and MANSFIELD, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from an order of the United States District Court for the District of Connecticut, 330 F.Supp. 131, declaring an equitable lien on certain property and imposing a constructive trust on income from certain other property transferred by the debtor New York, New Haven and Hartford Railroad (New Haven) to the Penn Central Transportation Company (Penn Central). We reverse on the ground that the district court lacked subject matter jurisdiction under § 77(a) of the Bankruptcy Act, 11 U.S.C. § 205(a) (1970), to issue the order, since the property affected is within the exclusive jurisdiction of another district court.

This appeal involves one more stage in the lengthy and complicated proceedings involving the reorganization of the New Haven, the merger of the Pennsylvania Railroad and the New York Central Railroad to form the Penn Central, the inclusion of the New Haven's lines in the merged Penn Central, and Penn Central's subsequent petition for reorganization. An outline of the various proceedings

from 1961 to 1969 is set forth in New Haven Inclusion Cases, 399 U.S. 392, 399–418, 90 S.Ct. 2054, 26 L.Ed.2d 691 (1970). See also Penn-Central Merger and N & W Inclusion Cases, 389 U.S. 486, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968) and Baltimore & Ohio R. R. v. United States, 386 U.S. 372, 87 S.Ct. 1100, 18 L.Ed.2d 159 (1967). For purposes of this appeal, a brief outline of the previous proceedings will suffice.

In July, 1961, New Haven filed a petition for reorganization pursuant to § 77 of the Bankruptcy Act, 11 U.S.C. § 205 (1970), in the United States District Court for the District of Connecticut. The court approved the petition and appointed trustees. In March, 1962 the Pennsylvania and New York Central railroads applied to the Interstate Commerce Commission for permission to merge. In June, 1962 the New Haven trustees filed with the Commission a petition for inclusion in the proposed merged railroad. The Commission has never proposed a reorganization plan for the New Haven itself. In 1966 the Commission approved the merger of the Pennsylvania and New York Central but required as a condition of approval of the merger that the New Haven's lines be included in the merged railway system. The New Haven trustees and representatives of the Pennsylvania and New York Central railroads thereupon entered into a Purchase Agreement, subsequently modified, which provided that all the New Haven assets would be transferred to Penn Central in return for cash, and stock and bonds of Penn Central. The New Haven trustees requested the Connecticut reorganization court to permit them to petition the Commission to require inclusion of the New Haven's lines in the merged rail system on the terms set forth in the Purchase Agreement. The Connecticut reorganization court granted permission, and in 1967 the Commission approved inclusion on the terms provided in the Purchase Agreement. Subsequent litigation dealt with the proper value to be assigned to the New Haven properties. On Decem-

ber 24, 1968, however, because of the precarious financial condition of the New Haven and the imminent termination of its rail service, the Connecticut reorganization court approved the transfer of New Haven's assets to Penn Central, leaving the exact amount and form of consideration to be paid by Penn Central to be settled finally at a later date. Since the Commission conditioned approval of the merger on inclusion of the New Haven, Penn Central, as a result of the merger, consented to be bound by "whatever terms the [Connecticut] reorganization court might [later] confirm . . . ." New Haven Inclusion Cases, supra, 399 U.S. at 428, 90 S.Ct. at 2076. However the transfer of New Haven's assets was expressly made "free and clear of all liens, charges and encumbrances."

The decision of the Supreme Court in *New Haven Inclusion Cases,* handed down on June 29, 1970, upheld the determination of the Connecticut reorganization court that the value of the New Haven property transferred to Penn Central was approximately $174.6 million. Under the Purchase Agreement, an object of which was to assure that the New Haven estate would actually receive full compensation, a portion of the consideration was to be paid to the New Haven estate in the form of Penn Central stock and bonds. Because of mounting financial pressures, however, the market value of Penn Central stock declined drastically from the date of the first negotiations between New Haven and Penn Central representatives and the final inclusion of the New Haven in the merger. See In re New York, N. H. & H. R. R., 304 F.Supp. 793, 808–810 (D.Conn.1969); New York, N. H. & H. R. R. Co. First Mortgage 4% Bondholders' Committee v. United States, 305 F.Supp. 1049, 1064–1065 (S.D.N.Y.1969). See also Pennsylvania Rail-Road Co.—Merger—New York Central Railroad Co. (Fifth Supplemental Report), 334 I.C.C. 528, 532 (1969). The Supreme Court, therefore, while agreeing with the Connecticut reorganization court's valuation, remanded the case for "[f]urther proceedings be-

fore the Commission and the appropriate federal courts . . . to determine the form that Penn Central's consideration to New Haven should properly take . . . . " *New Haven Inclusion Cases,* supra, 399 U.S. at 489, 90 S.Ct. at 2108.

On June 21, eight days before the Supreme Court's decision was announced, Penn Central filed a petition for reorganization in the Eastern District of Pennsylvania. The petition was approved the same day and the district court issued an order restraining and enjoining all persons "from interfering with, seizing, converting, appropriating, attaching, garnisheeing, levying upon, or enforcing liens upon, or in any manner whatsoever disturbing any portion of the assets . . . properties or premises belonging to, or in the possession of the Debtor [Penn Central] . . . and from commencing or continuing any proceeding against the Debtor." with certain exceptions not here relevant.

After receiving the mandate of the Supreme Court, the Connecticut reorganization court did not remand to the Commission for further proceedings. Instead, it ordered, on August 10, 1970, that a hearing be held on the question of whether the court should modify its prior orders with respect to the New Haven assets previously transferred to Penn Central. The Penn Central trustees appointed by the Pennsylvania reorganization court appeared at the hearing, although they were not parties to the New Haven reorganization. After various proceedings extending over approximately ten months, the Connecticut reorganization court issued a decision on June 11, 1971. The court first held, on various grounds, that it had subject matter jurisdiction. Because the decline in the market price of Penn Central stock and Penn Central's pending reorganization had rendered the court's plan for compensation for the New Haven property grossly inequitable, the court declared that, in order to implement the Supreme Court's mandate to compensate fully "the New Haven estate for the balance [of the purchase price] remaining due and to

provide reasonable security for the sum owed,"

"(1) . . . the 956,576 shares of common stock of the Penn Central Company, the parent company, should be treated as collateral security, of indeterminate value, for the balance of the purchase price due by the Penn Central Trustees; it is wholly unrealistic to treat the stock otherwise; (2) that an equitable lien must be declared on all of the former assets transferred by the New Haven to Penn Central, exclusive of (a) rolling stock and (b) the New Haven's one-half interest in the excess income from the Grand Central [Terminal] properties; and (3) that the Penn Central Trustees hold the latter item of property subject to a constructive trust in favor of the New Haven estate."

The reasoning of the district court was that, as the Supreme Court had determined that the New Haven estate had the constitutional right to receive $174.6 million for the assets transferred to the Penn Central, the New Haven estate could not be relegated to the position of a general creditor in the pending Penn Central reorganization.

On June 21, 1971 the Pennsylvania reorganization court issued an order directing the Penn Central trustees to appear before the Connecticut reorganization court and to object to the entry of any order based on that court's decision of June 11, on the ground that the Connecticut reorganization court had no jurisdiction to issue an order of the nature indicated by the decision of June 11. The order of the Pennsylvania reorganization court enjoined any person "from taking any action which would enforce, collect or cause to be perfected or paid any claim against the Debtor or its estate arising out of the inclusion of the New Haven into the Debtor, other than in these proceedings, or which would interfere with the primary jurisdiction of this Court to deal with properties in its possession or under its control pending further order of this court." In contravention of the constructive trust declared, but not yet

ordered, by the Connecticut reorganization court, the Pennsylvania court directed the Penn Central trustees to use all the income from the Grand Central Terminal properties to pay Penn Central's current expenses. Despite this action, the Connecticut reorganization court entered its order on June 22 and appointed counsel to perfect the interest of the New Haven estate in the property. An appeal of the order of the Connecticut district court was thereupon taken to this court.

## I. The Issues

The issue presented by this appeal is whether the Connecticut district court had jurisdiction to declare an equitable lien on the property transferred by New Haven to Penn Central and a constructive trust on that portion of the income from the Grand Central Terminal properties that, prior to the transfer, New Haven had the right to receive.

Section 77(a) of the Bankruptcy Act, 11 U.S.C. § 205(a) (1970), provides in relevant part:

"If the petition [stating that the railroad is insolvent and wishes to reorganize its capital structure] is so approved [by a judge of the district court of proper venue], the court in which the order is entered shall, during the pendency of the proceedings under this section and for the purposes thereof, have *exclusive jurisdiction of the debtor and its property wherever located. . . .*" (Emphasis added).

In the present case we are faced with conflicting claims of subject matter jurisdiction over certain property by two district courts sitting as reorganization courts in proceedings involving two debtor railroads. The property over which both courts claim jurisdiction is the property formerly comprising the assets of the New Haven that the New Haven was required to transfer to Penn Central before the receipt of compensation for it. The Connecticut reorganization court approved the transfer of all these proper-

ties to Penn Central in return for consideration in an amount and form to be determined in further proceedings.

The appellants argue that the Connecticut reorganization court had no jurisdiction to declare an equitable lien and a constructive trust on property and income formerly belonging to the New Haven. They maintain that, since the property was transferred to Penn Central almost three years before the issuance of the order that is the subject of this appeal, the Pennsylvania district court had exclusive jurisdiction under § 77(a) to determine all rights and interests in all of Penn Central's property, including the former property of the New Haven.

The appellees advance four bases of jurisdiction upon which the Connecticut district court could premise its order of June 22. First, they say, the "exclusive jurisdiction" provision of § 77(a) cannot be read literally, and the district court's action comports with the policy underlying that section. Second, the Connecticut reorganization court had jurisdiction to implement the Supreme Court's mandate in the *New Haven Inclusion Cases*. Third, the Connecticut reorganization court reserved jurisdiction, in its order authorizing the transfer of the New Haven estate's assets, over the property so transferred. Finally, the Connecticut reorganization court had *in personam* jurisdiction over the Penn Central trustees and thus had the power to adjudicate the rights of the parties in property not located within the court's territorial jurisdiction.

## II. Section 77(a) Jurisdiction

The problem here presented concerns the conflict of jurisdiction between two federal courts each claiming jurisdiction to affect interests in certain property over which, under a literal reading of § 77(a), one federal court has "exclusive jurisdiction." Although conflicting claims of jurisdiction under § 77(a) are not uncommon, the usual type of conflict is between a state court and a federal court, in which the state court's action would in some way interfere with the

federal court's administration or actual reorganization of the debtor railroad. See Gardner v. New Jersey, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947); Thompson v. Texas Mexican Ry., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946); Board of Dirs. of St. Francis Levee Dist. v. Kurn, 98 F.2d 394 (8th Cir. 1938). Cf. Palmer v. Massachusetts, 308 U.S. 79, 60 S.Ct. 34, 84 L.Ed. 93 (1939). Situations involving that type of conflict involve factors arising from the federal-state relationship that are not present in the instant case. See Callaway v. Benton, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949); Meyer v. Fleming, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595 (1946); Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); In re New York, N. H. & H. R. R., 109 F.2d 136 (2d Cir. 1940). Cf. 28 U.S.C. § 1334 (1970).

 The Congressional purpose behind the enactment of § 77 in general and the "exclusive jurisdiction" provision of § 77(a) in particular was to eliminate the need for ancillary receivership proceedings in federal courts in every state in which the railroad operated its lines. See Rodgers & Groom, Reorganization of Railroad Corporations Under Section 77 of the Bankruptcy Act, 33 Colum.L.Rev. 571 (1933); Craven & Fuller, The 1935 Amendments of the Railroad Bankruptcy Law, 49 Harv.L.Rev. 1254 (1936). The overlapping jurisdiction of numerous courts was not conducive to the speedy and efficient reorganization of a financially unsound railroad. See Fuller, The Background and Techniques of Equity and Bankruptcy Railroad Reorganizations—A Survey, 7 Law & Contemp. Probs. 377 (1940); Laughlin, The Extraterritorial Powers of Receivers, 45 Harv. L.Rev. 429 (1932); Morehouse, Receiverships, 7 Yale L.J. 299 (1898). By eliminating the need for ancillary receivership proceedings and providing for "exclusive jurisdiction" in one federal court with nationwide service of process, see § 77(a); Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Chicago, R. I. & Pac. Ry., 294 U.S. 648, 55 S.Ct. 595,

79 L.Ed. 1110 (1935), Congress intended to vest subject matter jurisdiction over the debtor railroad and its property in one federal court which would have absolute power over that property and over the administration of the railroad pending the submission of a reorganization plan by the Interstate Commerce Commission and approval of such a plan by the court. See Ecker v. Western Pac. RR., 318 U.S. 448, 466–474, 63 S.Ct. 692, 87 L.Ed. 892 (1943). Cf. Palmer v. Massachusetts, supra, 308 U.S. at 88–89 and n. 15, 60 S.Ct. 34.

The Supreme Court's decision in Warren v. Palmer, 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118 (1940) is determinative of this case. The *Palmer* case involved the conflict between two federal district courts sitting as reorganization courts pursuant to § 77(a), with each claiming subject matter jurisdiction over the same property. The Boston & Providence Railroad leased one of its lines to the Old Colony Railroad, and Old Colony then leased the line to the New York, New Haven and Hartford Railroad. The New Haven, experiencing financial difficulties, filed a petition for reorganization which was approved by the district court for the District of Connecticut. After various proceedings, the court ordered the New Haven trustees to reject the B & P lease pursuant to § 77(c) (6) and to operate the line for the account of B & P. Shortly thereafter the B & P filed a petition for reorganization which was approved by the district court for the District of Massachusetts. As the line operated by the New Haven trustees for the account of B & P was incurring losses, the New Haven trustees requested and the Connecticut district court granted a lien on the B & P property in the amount of the loss. The Supreme Court upheld the jurisdiction of the Connecticut court to declare a lien which would be binding on the Massachusetts district court. The Supreme Court said:

"The property of the Boston and Providence came into the *possession* of the trustees of the New Haven and the Old Colony and remained there

during the entire time covered by the claim. These roads were lessees of the property and debtors under § 77 in the Connecticut court. It is immaterial what title the debtors had, whether a lease or a fee. The physical property covered by the lease was in the custody of the Connecticut court by virtue of the provisions of § 77(a). . . .

. . . . . .

. . . In view of the public importance of rail service, we think this subsection [§ 77(c) (6)] represents an intention to give the court *charged with operation* the fullest ability to secure the necessities of operation— an intention to give the operating court power to promise those having the materials, men and equipment needed for operation a first lien on the road to secure payment for the operation."

310 U.S. at 138–140, 60 S.Ct. at 867 (footnotes omitted; emphasis added). See also Thompson v. Magnolia Petroleum Co., supra, 309 U.S. at 481–482, 60 S.Ct. 628. The Supreme Court had earlier stated in Ex parte Baldwin, 291 U.S. 610, 615–616, 54 S.Ct. 551, 553, 78 L.Ed. 1020 (1934):

"All property in the possession of a bankrupt of which he claims the ownership passes, upon the filing of a petition in bankruptcy, into the custody of the court in bankruptcy. . . . The jurisdiction in such cases is exclusive of the jurisdiction of other courts, although otherwise the controversy would be cognizable in them.

. . . .

. . . But the exclusive jurisdiction acquired by the bankruptcy court through taking possession of the interurban railway under claim of title, was not limited to the prevention of interference with the use of the land . . . . The jurisdiction extends also to the adjudication of questions respecting the title."

To accept appellees' argument that the "exclusive jurisdiction" provision of § 77(a) in this context does not in fact mean "exclusive"

"would tend greatly to foment conflicts between coordinate courts and compel creditors, in the protection of their interests, to ride the circuit, demonstrating the basis of their positions in successive courts. Surely such a state of affairs would not constitute the intended improvement over the practice in equity receiverships, wherein the task of ascertaining charges and assessing liens had been consolidated . . . in the court of primary jurisdiction."

In re New York, N. H. & H. R.R., 26 F. Supp. 18, 23 (D.Conn.), aff'd sub nom. Palmer v. Warren, 108 F.2d 164 (2d Cir. 1939), aff'd, 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118 (1940), quoted with approval in New Haven Inclusion Cases, supra, 399 U.S. at 427, 90 S.Ct. 2054, 26 L.Ed.2d 69. See also New England Coal & Coke Co. v. Rutland R.R., 143 F.2d 179, 184 (2d Cir. 1944), quoted with approval in New Haven Inclusion Cases, supra, 399 U.S. at 426, 90 S.Ct. 2054. The position of the commentators is that, in a situation such as this, "exclusive jurisdiction" is given and should be given its literal meaning. See Mussman and Riesenfeld, Jurisdiction in Bankruptcy, 13 Law & Contemp. Probs. 88, 97–99 (1948); Rodgers & Groom, supra at 607–608 and n. 207; Weiner, Reorganization Under Section 77: A Comment, 33 Colum.L.Rev. 834, 846–848 (1933); 5 Collier, Bankruptcy § 77.11 (14th Ed. 1970).

■ We hold, therefore, that because Penn Central had legal title to and actual possession of the former assets of New Haven when its petition was approved; because Penn Central was, and the trustees are, using those assets and the income therefrom to operate its lines and the former lines of the New Haven; because the order of the Connecticut district court could, at this stage of the Penn Central reorganization proceedings, seriously impair the formulation of a workable plan for the financial resuscitation

of Penn Central by the Commission and the ability of the Pennsylvania reorganization court to administer the entire Penn Central system, of which the New Haven line is but a division, see, *e. g.,* § 77(*o*), 11 U.S.C. § 205(*o*) (1970), only the Pennsylvania reorganization court had subject matter jurisdiction under § 77(a) over the property here in question.

### III. The Supreme Court's Mandate in the *New Haven Inclusion Cases*

Appellees maintain that the Connecticut reorganization court had jurisdiction to declare the equitable lien and constructive trust, in order to provide that the New Haven would receive "reasonable assurance" of full payment for the assets transferred to Penn Central, under the terms of the mandate of the Supreme Court in the *New Haven Inclusion Cases.*

Penn Central's petition for reorganization was approved eight days before the Supreme Court's decision in *New Haven Inclusion Cases.* The Supreme Court said at the beginning of its opinion:

> "On June 21, 1970, the Penn Central Transportation Company filed a petition for reorganization . . . in the United States District Court for the Eastern District of Pennsylvania. Whether the financial obligations dealt with in the present opinion may become subject to modification in or because of those proceedings is a question with which the present opinion in no way deals."

New Haven Inclusion Cases, supra, at 399 n.+, 90 S.Ct. at 2061. The Court set aside the order of the Connecticut district court and remanded for "[f]urther proceedings before the Commission and the *appropriate federal courts* . . . to determine the form that Penn Central's consideration to New Haven should properly take and the status of the New Haven estate as a shareholder or creditor of Penn Central." Id. at 489, 90 S.Ct. at 2108 (emphasis added).

In view of the language accompanying the remand, we do not interpret the mandate as conferring jurisdiction on the Connecticut reorganization court, particularly when as we have demonstrated, the interpretations of and policy underlying § 77(a) clearly require the opposite result.

### IV. Retention of Jurisdiction and *In Personam* Jurisdiction

Appellees would have us hold that the Connecticut district court, in its order transferring the New Haven's assets to Penn Central and ordering inclusion, retained "jurisdiction to act on any question respecting claims between the two railroads." However the order cannot be properly interpreted as either encompassing this type of equitable action or, indeed, any action based on events occurring subsequent to the transfer order. See Towers Hotel Corp. v. Lafayette Nat'l Bank, 148 F.2d 145 (2d Cir. 1945).

■ Even assuming that the reservation of jurisdiction could be construed as encompassing the type of action involved here, once the property came within the "exclusive jurisdiction" of the Pennsylvania reorganization court by virtue of that court's approval of Penn Central's petition for reorganization, the policy of § 77(a) would prevent acceptance of appellees' contention. Due consideration of the congressional purpose in granting "exclusive jurisdiction" over the debtor's property to the reorganization court, would preclude permitting another district court to exercise jurisdiction on the ground that such jurisdiction was reserved in a related proceeding when the effect of the exercise of retained jurisdiction would be to hinder the ability of the reorganization court to administer the property of the railroad pending reorganization. Thus, even if the Connecticut reorganization court's order were construed to include the reservation of jurisdiction to declare an equitable lien and a constructive trust, the subsequent approval of Penn Central's petition by the Pennsylvania reorganization court served to oust the Connecticut court's jurisdiction and to vest "exclusive jurisdiction" in the Pennsylvania court.

■ Appellees' final contention, that the Connecticut reorganization court had jurisdiction to declare the lien and constructive because it had *in personam* jurisdiction over the Penn Central trustees, is without merit. Even if the Connecticut court had *in personam* jurisdiction, it lacked subject matter jurisdiction; the Pennsylvania reorganization court had "exclusive jurisdiction" over the subject matter—the former property of New Haven—and only that court was competent to take action with respect to that property.

## V. Remand

■■ This case must be remanded to the Commission so that a reorganization plan, fair and equitable to all parties, can be formulated. One of the main reasons for the enactment of § 77 was to establish a reorganization procedure in which an expert agency would examine the technical and financial problems of the railroad and propose a reorganization plan to the reorganization court for approval. As both the Penn Central and the New Haven are in reorganization, at least nominally, before courts in different circuits, the Commission is the common denominator between those courts so far as the formulation of a single plan, or two interrelated plans, is concerned. Whatever protection the New Haven estate must receive in terms of some senior position in the Penn Central proceeding must first be proposed by the Commission in the context of a reorganization plan for the Penn Central which, it is to be hoped, will advance the public interest by successfully establishing a financially viable Penn Central. The Commission has stated that, if the proceeding is remanded to it, it will consolidate the Penn Central reorganization and New Haven inclusion proceedings so as to consider the terms of the New Haven inclusion as "a portion of the reorganization of Penn Central . . . . " This procedure is, we believe, the proper method by which the interests of all parties—the New Haven estate, Penn Central and its creditors, and the public—can best be advanced.

We do not imply by this remand that we disagree either with the fairness of Judge Anderson's order or with his conclusion that the Supreme Court's opinion in *New Haven Inclusion Cases* requires that the New Haven estate receive $174.6 million as compensation for the taking of its property. We hold only that the Connecticut reorganization court is not the proper body to grant whatever protection is required because it has no jurisdiction, and we remand the case to the Interstate Commerce Commission with directions to consider, in light of the Penn Central reorganization, the form of consideration the New Haven estate should receive.

Reversed and remanded to the Interstate Commerce Commission.

MANSFIELD, Circuit Judge (concurring and dissenting):

I concur in the majority opinion to the extent that it remands the case to the Interstate Commerce Commission with directions, in the light of the Penn Central reorganization, to consider the form of the consideration which the New Haven estate is to receive. However, I dissent from the view that the Connecticut reorganization court lacks jurisdiction to review the fairness and equity of the consideration to be paid by the Penn Central to the New Haven estate. In my view the unusual factual and legal background of this dispute suggests that the Connecticut and Pennsylvania reorganization courts have concurrent jurisdiction over that subject matter.

I agree with the majority that once the Penn Central Railroad was placed in reorganization pursuant to § 77 of the Bankruptcy Act the Pennsylvania court was vested by § 77(a) with exclusive jurisdiction over its properties, including those that had been transferred to it by the New Haven pursuant to the Connecticut court's authorization. Thereafter the Connecticut court was barred from taking any action which might have the effect of interfering with the Pennsylvania court's operation of the railroad in reorganization under its jurisdiction. Although the creation of a lien and a con-

structive trust upon assets of the Penn Central might not have the immediate effect of disrupting that court's operation of the railroad, such action could pose the threat of doing so. For example, if the Pennsylvania court wished to raise money for operation of the railroad by further mortgaging its properties, it might be frustrated unless it had the power to disregard or set aside the lien and trust declared by the Connecticut court.

Although the Connecticut court may not take any action which would have the effect of interfering with the Pennsylvania court's operation of the railroad, I do not agree that the Commission and the Pennsylvania court have the power, unilaterally and without approval of the Connecticut court, to determine the form of the consideration that is to be paid to the New Haven estate and its creditors for the assets transferred to the Penn Central. The Connecticut court continues to function as a § 77 reorganization court and has been vested by the Supreme Court with the powers of a reviewing court under § 5 of the Interstate Commerce Act. 399 U.S. at 430, 90 S.Ct. 2054, 26 L.Ed.2d 691. As such it has a vital interest in the final determination of the terms and conditions of the New Haven's inclusion in the Penn Central. Indeed the Supreme Court, after careful review, accepted the Connecticut court's formulation of those terms. It remanded only because the "impact of recent events," which I construe to mean the Penn Central's bankruptcy (expressly referred to by the Court at page 399 n. †, 90 S.Ct. 2054), had rendered unrealistic the provisions for the Penn Central's underwriting, at $87.50 per share, of the stock to be transferred by it to the New Haven pursuant to the plan, thereby depriving the New Haven and its creditors of the purchase price to which they were constitutionally entitled.

The reorganization of the New Haven Railroad and its merger into the Penn Central will not have been completed until the fairness and equity of the terms and conditions of the transfer of its assets to the Penn Central, including the form of the consideration that is to be received, have finally been determined. The Connecticut court continues to have the power and the duty as a reviewing court under § 5 of the Interstate Commerce Act and as a reorganization court under § 77 of the Bankruptcy Act, to participate in that determination. If the New Haven estate had become in effect a mere subsidiary or ward of the Pennsylvania court for reorganization purposes, the Supreme Court, which knew that the Penn Central was in reorganization and which was aware of the provision of § 77(a) giving "exclusive jurisdiction" to a reorganization court over properties in its possession, see 399 U.S. at 420, 90 S.Ct. 2054, would have held that the form of the consideration to be paid by the Penn Central must thereafter be determined by the Pennsylvania court as part of the reorganization of the Penn Central, and it would have directed that upon remand the Connecticut court must transfer the case to the Commission and the Pennsylvania court. Instead it remanded the case to the Connecticut court, stating:

> "Further proceedings before the Commission and the appropriate federal courts will be necessary to determine the form that Penn Central's consideration to New Haven should properly take and the status of the New Haven estate as a shareholder or creditor of Penn Central." 399 U.S. at 489, 90 S.Ct. at 2108.

The Supreme Court's remand of the case to the Connecticut court without further qualifications, coupled with the use of the plural term "courts," confirms the view that the Connecticut court was not to be stripped of its powers as a reviewing court.

I further disagree with the majority's view that Warren v. Palmer, 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118 (1940), "is determinative of this case" or that it has the effect of precluding the Connecticut court from having a voice in the fairness and equity of the consideration to be received by the New Haven and its creditors from the Penn Central. Al-

though that decision did involve a question of competing jurisdiction between two § 77 reorganization courts, it turned on a provision of the Bankruptcy Act not applicable here, § 77(c) (6), which specifically requires a reorganization court that has rejected a leased line to operate it if the lessor is incapable of doing so, in which case continued operation is for the account of the lessor. The Supreme Court interpreted that section as giving "the court charged with operation the fullest ability to secure the necessities of operation," 310 U.S. at 140, 60 S.Ct. at 868. In short the Supreme Court understandably decided that a reorganization court operating a leased line must have the power to impose a lien for deficits resulting from its being compelled to operate the line for the benefit of the lessor. The decision hardly precludes the existence of concurrent jurisdiction in an appropriate case.

Thus it appears to me that this case, which is *sui generis,* involves dual or concurrent jurisdiction with respect to the fairness and equity of the consideration to be paid by the Penn Central in reorganization to the New Haven. While the Pennsylvania court has exclusive jurisdiction over the operation of the Penn Central, including the New Haven Division, the fairness of the consideration to be paid to the New Haven, including the form of that consideration and the status of the New Haven as a creditor in the Penn Central reorganization, as initially formulated by the Commission as the common denominator, is subject to approval by both courts.

That there is nothing novel or unusual about the existence of concurrent jurisdiction in railroad reorganization proceedings is demonstrated by the Supreme Court's recognition at an earlier stage in these proceedings that the Connecticut court, as a § 77 reorganization court, and the three-judge district court sitting in the Southern District of New York as a reviewing court under § 5 of the Interstate Commerce Act, each had jurisdiction to review the fairness and reasonableness of the terms for inclusion of the New Haven in the Penn Central. See 399 U.S. at 419–430, 90 S.Ct. 2054. There the Supreme Court concluded, for reasons set forth in detail, that the three-judge court should have deferred to the Connecticut court. Although there is always the danger that exercise of overlapping or concurrent jurisdiction by two courts may lead to conflict or wasteful duplication of effort, this seems to me to be an instance where "two heads are better than one." An important reason for holding that the Connecticut court should not defer here, which the Supreme Court implicitly recognized in the *New Haven Inclusion Cases,* is that over the years of the New Haven's reorganization the Connecticut court has become intimately familiar with the complicated factual and legal issues arising out of the New Haven's reorganization, thereby gaining a manifest expertise in the valuation of its assets. While I have no doubt about the competence of the highly respected Pennsylvania court to review the matter, it seems to me that in a matter of such importance both courts, working cooperatively and with the aid of the Commission, can function effectively to produce a result that will assure all parties a greater degree of fairness and equity than might otherwise be realized.

Thus none of the conditions mandating that one court defer to the other seems to exist here. The issue cannot be resolved in favor of the Pennsylvania court on the ground that it first acquired jurisdiction through possession of the New Haven properties (the basis used by the Supreme Court in the *New Haven Inclusion Cases*). The Connecticut court was the first to acquire possession as a reorganization court and it continued thereafter in possession for years, participating in the formulation of the inclusion terms that were approved by the Supreme Court. Nor can it be said that the Connecticut court, by transferring the New Haven properties to the Penn Central, implicitly agreed to defer to the Pennsylvania court. On the contrary, the Connecticut court, in ordering the transfer of the New Haven property to

the Penn Central, expressly reserved jurisdiction to pass upon the fairness and adequacy of the consideration and the other terms of inclusion of the New Haven in the Penn Central. Unlike the circumstances surrounding the concurrent jurisdiction of the Connecticut court and the three-judge district court in the Southern District of New York, nothing in the background of the present jurisdictional overlap suggests that either forum here is better equipped for the task than the other. Nor is there any reason to believe that both courts would not cooperate in their review of the terms formulated by the Commission, eventually reaching an agreement. If they should disagree, however, I have no doubt that upon ultimate review of the Penn Central reorganization plan, including the form of consideration to be paid to the New Haven estate, the Supreme Court would appreciate having the recorded views of the Connecticut court, which has become a respected veteran in this protracted and complicated matter.